# MORRISON MAHONEY LLP

COUNSELLORS AT LAW

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500

John T. Harding
Phone: 617-439-7558
Fax: 617-342-4888
jharding@morrisonmahoney.com

| MASSACHUSETTS | ( | IECTICUT |
| BOSTON | l | ʹORD |
| FALL RIVER | | |
| SPRINGFIELD | l | YORK |
| WORCESTER | l | ʹORK |
| RHODE ISLAND | l | JERSEY |
| PROVIDENCE | l | ʹPANY |
| | l | ,AND |
| | l | ɔN |

September 23, 2005

## HAND DELIVERED
Clerk
United States District Court
One Courthouse Way
Boston, MA 02210

*Re:*   ***American Reinsurance Co., et al v.***
***American International Group and***
***Trenwick America Reinsurance Corp.***
***No: 05-CV-11840MLW***

Dear Sir or Madam:

Enclosed for filing in this action is the following item:

***Notice of Filing of State Court Record***

Thank you for your attention to this matter.

Sincerely yours,

John T. Harding

JTH/tc
Enc.
cc:   Steven L. Schreckinger, Esq.
Robin C. Dusek, Esq.
William A. Maher, Esq.
Margaret Dale, Esq.
Eben A. Krim, Esq.

964899v1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AMERICAN REINSURANCE COMPANY, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO: 05-CV-11840MLW |
| v. | ) ) | |
| AMERICAN INTERNATIONAL GROUP and TRENWICK AMERICA REINSURANCE CORPORATION, Defendants. | ) ) ) ) ) | |

## NOTICE OF FILING OF STATE COURT RECORD

Pursuant to Local District Court Rule 81.1, defendants the relevant member

associated companies of American International Group, Inc. ("AIG") and Trenwick Ame

Reinsurance Corporation ("Trenwick") hereby file with this Court the attached certified cop

all docket entries and proceedings in the action styled as *American Reinsurance Company, e*

*v. American International Group, et al.*, Commonwealth of Massachusetts, Suffolk Supe

Court, Civil Action No. SUCV 2005-02788-BLS.

> **AMERICAN INTERNATIONAL GROUP, INC.**
>
> By its attorneys,
>
> Michel F. Aylward BBO #024850
> John T. Harding BBO #221270
> **MORRISON MAHONEY LLP**
> 250 Summer Street
> Boston, MA 02210
> (617) 439-7558
> (617) 342-4888 (facsimile)

964902v1

Of Counsel:

William A. Maher
**WOLLMUTH MAHER &
DEUTSCH LLP**
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
(212) 382-0050 (facsimile)

**TRENWICK AMERICA
REINSURANCE CORP.**

By its attorneys,

Eben A. Krim, Esq.
**PROSKAUER ROSE LLP**
One International Place, 22nd Floor
Boston, MA 02110
(617) 526-9700
(617)526-9899 (facsimile)

Of counsel:

Margaret Dale, Esq.
**PROSKAUER ROSE LLP**
1585 Broadway
New York, NY 10036-8299
(212) 956-9064
(212)969-2900 (facsimile)

Dated: September 23, 2005

## CERTIFICATE OF SERVICE

I, John T. Harding, counsel for Defendant American International Group, hereby cei  ⁊

that on September 23, 2005, I served a copy of the foregoing document by first class mail o⒩  l

known counsel of record.

John T. Harding

964902v1

MASXP-20050816
gueri

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

05-CV-11840

09/20/2005
09:40 AM

M

## SUCV2005-02788
### American Reinsurance Company et al v American International Group et al

| | | | |
|---|---|---|---|
| **File Date** | 07/06/2005 | **Status** | Disposed: transfered to other court (dtrans) |
| **Status Date** | 09/20/2005 | **Session** | BLS - CtRm 1309, 3 Pemberton Square, Boston |
| **Origin** | 1 | **Case Type** | BE1 - Fraud, business torts, etc |
| **Lead Case** | | **Track** | B |

| | | | |
|---|---|---|---|
| **Service** | | **Answer** | **Rule12/19/20** |
| **Rule 15** | | **Discovery** | **Rule 56** |
| **Final PTC** | | **Disposition** | **Jury Trial** No |

---

**PARTIES**

**Plaintiff**
American Reinsurance Company
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Plaintiff**
American United Life Insurance Company
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

# SUCV2005-02788
## American Reinsurance Company et al v American International Group et al

**Plaintiff**
Dorinco Reinsurance Company
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Plaintiff**
First Allmerica Financial Life Insurance Company
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Plaintiff**
Guardian Life Insurance Company of America
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

Case 1:05-cv-11840-MLW   Document 10   Filed 09/23/2005   Page 6 of 47

MASXP-20050816
guen

09/20/2005
09:40 AM

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

# SUCV2005-02788
## American Reinsurance Company et al v American International Group et al

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Plaintiff**
Hartford Life Insurance Company
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Plaintiff**
Houston Casualty Company
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## SUCV2005-02788
### American Reinsurance Company et al v American International Group et al

| | |
|---|---|
| **Plaintiff**<br>John Hancock Life Insurance Company (USA)<br>Active 07/06/2005 | **Private Counsel 298740**<br>Scott P Lewis<br>Palmer & Dodge<br>111 Huntington Avenue<br>The Prudential Center<br>Boston, MA 02199-7613<br>Phone: 617-239-0100<br>Fax: 617-227-4420<br>Active 07/06/2005 Notify |

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Plaintiff**
Insurance Corporation of Hannover
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Plaintiff**
Monumental Life Insurance Company
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

MASXP-20050816
guen

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

09/20/2005
09:40 AM

## SUCV2005-02788
## American Reinsurance Company et al v American International Group et al

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Plaintiff**
Pan American Life Insurance Company
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Plaintiff**
Phoenix Life Insurance Company
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

# SUCV2005-02788
## American Reinsurance Company et al v American International Group et al

| | |
|---|---|
| **Plaintiff**<br>Reliance Standard Life Insurance Company<br>Active 07/06/2005 | **Private Counsel 298740**<br>Scott P Lewis<br>Palmer & Dodge<br>111 Huntington Avenue<br>The Prudential Center<br>Boston, MA 02199-7613<br>Phone: 617-239-0100<br>Fax: 617-227-4420<br>Active 07/06/2005 Notify |

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Plaintiff**
Reliastar Life Insurance Company
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Plaintiff**
Sun Life Assurance Company of Canada
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## SUCV2005-02788

## American Reinsurance Company et al v American International Group et al

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Plaintiff**
Swiss Re Life & Health America
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Plaintiff**
Transamerica Occidental Life Insurance Company
Active 07/06/2005

**Private Counsel 298740**
Scott P Lewis
Palmer & Dodge
111 Huntington Avenue
The Prudential Center
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

**Private Counsel 447100**
Steven L Schreckinger
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 07/06/2005 Notify

MASXP-20050816
gueń

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

09/20/2005
09:40 AM

# SUCV2005-02788
## American Reinsurance Company et al v American International Group et al

**Defendant**
American International Group
Service pending 07/06/2005

**Private Counsel 024850**
Michael F Aylward
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210-1181
Phone: 617-439-7500
Fax: 617-439-7590
Active 07/28/2005 Notify

**Private Counsel 221270**
John T Harding
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210-1118
Phone: 617-439-7500
Fax: 617-439-7590
Active 07/28/2005 Notify

**Defendant**
Trenwick America Reinsurance Corporation
Service pending 07/06/2005

**Private Counsel 566211**
Mark W Batten
Proskauer Rose LLP
1 International Place, 14th Fl
Boston, MA 02110
Phone: 617-526-9600
Fax: 617-526-9899
Active 08/25/2005 Notify

**Private Counsel 652506**
Eben A Krim
Proskauer Rose LLP
1 International Place, 14th Fl
Boston, MA 02110
Phone: 617-526-9850
Fax: 617-526-9899
Active 08/25/2005 Notify

**Out-of-state attorney**
Willian A. Maher
500 Fith Ave
New York
New York, NY 10110
Phone: 212-382-3300
Active 09/20/2005

MASXP-20050816                    **Commonwealth of Massachusetts**                    09/20/2005
gueń                                  **SUFFOLK SUPERIOR COURT**                          09:40 AM
                                          **Case Summary**
                                           **Civil Docket**

# SUCV2005-02788
## American Reinsurance Company et al v American International Group et al

**Out-of-state attorney**
Margaret Dale
1585 Broasway
New York
New York, NY 10036-8299
Phone: 212-956-9064
Active 09/20/2005

**ENTRIES**

| Date | Paper | Text |
|------|-------|------|
| 07/06/2005 | 1.0 | Complaint (Business) filed |
| 07/06/2005 | | Origin 1, Type BE1, Track B. |
| 07/06/2005 | 2.0 | Civil action cover sheet filed |
| 07/13/2005 | 3.0 | ORDER re: Notice of Acceptance into the Business Litigation Session |
| | | (Allan vanGestel, Justice) (entered 7/7/05) notice sent 7/8/05 |
| 07/27/2005 | 4.0 | Stipulation to extend time for American International Group to file |
| | | an answer/responsive pleading to the complaint to and including |
| | | August 26, 2005 |
| 08/24/2005 | 5.0 | Assented to motion extending time for deft Trenwick America |
| | | Reinsurance Corp to ANSWER, move, or otherwise respond to complaint |
| | | until Sept l5, 2005 (w/o opposition) |
| 08/25/2005 | 6.0 | Stipulation to further extend time for American International Group |
| | | to file an answer/responsive pleading to the complaint to and |
| | | including September 09, 2005 |
| 09/09/2005 | | MOTION (P#5) ALLOWED (Allan vanGestel, Justice) Notices mailed |
| | | September 12, 2005 |
| 09/19/2005 | | Certifited copy of petiton for removal to U. S. Dist. Court of Defts. |
| | | American International Group and Trenwick America Reinsurance |
| | | Corporation U. S. Dist.#(025-11840MLW). |
| 09/20/2005 | | Case REMOVED this date to US District Court of Massachusetts |

**EVENTS**

**I HEREBY ATTEST AND CERTIFY ON**

SEPT. 20, 2005 **, THAT THE**

**FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.**

**MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT**

ASSISTANT CLERK.

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.

Superior Court
Civil Action No. 05-

American Reinsurance Company; American
United Life Insurance Company; Dorinco
Reinsurance Company; First Allmerica
Financial Life Insurance Company; Guardian
Life Insurance Company of America; Hartford
Life Insurance Company; Houston Casualty
Company; John Hancock Life Insurance
Company (U.S.A.); Insurance Corporation of
Hannover; Monumental Life Insurance
Company; Pan American Life Insurance
Company; Phoenix Life Insurance Company;
Reliance Standard Life Insurance Company;
Reliastar Life Insurance Company; Sun Life
Assurance Company of Canada; Swiss Re Life
& Health America; and Transamerica
Occidental Life Insurance Company,

                    Plaintiffs,

          v.

American International Group and Trenwick
America Reinsurance Corporation,

                    Defendants.



**COMPLAINT**

1.     The plaintiff insurance companies are all members of reinsurance facilities

managed in Massachusetts that provided insurance to defendant Trenwick America Reinsurance

Corporation ("Trenwick") to cover the risk of losses on contracts of reinsurance ostensibly

"fronted" by Trenwick on their behalf, including reinsurance contracts Trenwick issued to variou

subsidiaries of defendant American International Group ("AIG"). Working in collusion with

Trenwick, AIG has wrongfully manipulated this arrangement to create almost $73 million in

181239.5

improper demands for coverage against the plaintiffs as part of a pattern of unfair, deceptive and fraudulent practices by AIG involving the workers' compensation, occupational accident and industrial aid claims of a number of AIG insurance company subsidiaries.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action under G.L. c. 212, § 4 (general jurisdiction), G.L. c. 93A, § 11 (unfair and deceptive trade practices) and c. 231A, § 1 (declarate judgments). This Court has personal jurisdiction over the defendants, AIG and Trenwick, under G.L. c. 223A, § 3 and otherwise, because they each transacted business or caused tortious injury by an act or omission in the Commonwealth.

3.     Venue is proper in this Court under G.L. c. 223, § 1 because one of the plaintiffs, John Hancock Life Insurance Company (U.S.A.), maintains its principal place of business in Boston, Massachusetts.

## PARTIES

### Plaintiffs

4.     Plaintiff American Reinsurance Company ("Am Re") is a professional reinsurer domiciled in Delaware and licensed to conduct business in Massachusetts. In collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of G.L. c. 93A, AIG has made demand against Am Re on false claims for reinsurance coverage. On November 23, 2004, AIG sent Am Re an improper demand in the amount of $2,485,602, by reason of which Am Re has been damaged.

5.     Plaintiff American United Life Insurance Company ("American United") is an insurance company domiciled in Indiana and licensed to conduct business in Massachusetts. American United received over $36 million in premium and annuity considerations in 2004 from

181239.5                                                                                2

business conducted in Massachusetts. In collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG has made demand against American United on false claims for reinsurance coverage. On November 23, 2004, AIG sent American United an improper demand in the amount of $5,125,459, by reason o which American United has been damaged.

6.    Plaintiff Dorinco Reinsurance Company ("Dorinco") is a licensed insurance company domiciled in Michigan. In collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG has made demand against Dorinco on false claims for reinsurance coverage. On November 23, 2004, AIG sent Dorinco an improper demand in the amount of $448,261, by reason of which Dorinco has been damaged.

7.    Plaintiff First Allmerica Financial Life Insurance Company ("First Allmerica") is an insurance company domiciled in Massachusetts with its main office in Worcester, Massachusetts. First Allmerica is licensed to conduct business in Massachusetts and received over $2 million in premium in 2004 from business conducted in Massachusetts. In collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG has made demand against First Allmerica on false claims for reinsurance coverage. On November 23, 2004, AIG sent First Allmerica an improper demand in the amount of $20,501,035, by reason of which First Allmerica has been damaged.

8.    Plaintiff Guardian Life Insurance Company of America ("Guardian") is an insurance company domiciled in New York and licensed to conduct business in Massachusetts. Guardian operates in Massachusetts through a subsidiary and through two administrative offices. Guardian received over $235 million in premium in 2004 from business conducted in

181239.5

3

Massachusetts. In collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG has made demand against Guardian o false claims for reinsurance coverage. On November 23, 2004, AIG sent Guardian an improper demand in the amount of $2,762,546, by reason of which Guardian has been damaged.

9.     Plaintiff Hartford Life Insurance Company ("Hartford") is an insurance company domiciled in Connecticut and licensed to conduct business in Massachusetts. Hartford received approximately $185 million in premium in 2004 from business conducted in Massachusetts. In collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG has made demand against Hartford on false claims for reinsurance coverage. On November 23, 2004, AIG sent Hartford an improper demand in the amount of $4,024,509, by reason of which Hartford has been damaged.

10.     Plaintiff Houston Casualty Company ("HCC") is an insurance company domiciled in Texas and operating on a surplus lines basis in Massachusetts. HCC received over $10 million in premium in 2004 from business conducted in Massachusetts. In collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG has made demand against HCC on false claims for reinsurance coverage. On November 23, 2004, AIG sent HCC an improper demand in the amount of $57,361, by reason of which HCC has been damaged.

11.     Plaintiff Insurance Corporation of Hannover ("ICH") is an insurance company domiciled in Illinois and licensed to conduct business in Massachusetts. ICH operates, in part, through an agent located in Lowell, Massachusetts. ICH received over $2.5 million in premium in 2004 from business conducted in Massachusetts. In collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG has

181239.5                                                                4

made demand against ICH on false claims for reinsurance coverage. On November 23, 2004, AIG sent ICH an improper demand in the amount of $2,608,329, by reason of which ICH has been damaged.

12.     Plaintiff John Hancock Life Insurance Company (U.S.A.) ("John Hancock"), the successor through merger to Facility member The Manufacturer's Life Insurance Company (U.S.A.) ("Manulife"), is an insurance company domiciled in Michigan with its main office in Boston, Massachusetts. John Hancock is licensed to conduct business in Massachusetts and received over $45 million in premium in 2004 from business conducted in Massachusetts. In collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG has made demand against Manulife on false claims fo reinsurance coverage. On November 23, 2004, AIG sent Manulife an improper demand in the amount of $6,765,043, by reason of which John Hancock, as successor-in-interest to Manulife, has been damaged.

13.     Plaintiff Monumental Life Insurance Company ("Monumental") is an insurance company domiciled in Maryland and licensed to conduct business in Massachusetts. Monumental received over $12 million in premium in 2004 from business conducted in Massachusetts. In collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG has made demand against Monumental on false claims for reinsurance coverage. On November 23, 2004, AIG sent Monumental an improper demand in the amount of $73,563, by reason of which Monumental has been damaged.

14.     Plaintiff Pan American Life Insurance Company ("Pan American") is an insurance company domiciled in Louisiana and licensed to conduct business in Massachusetts.

181239.5

5

Through its agents in Massachusetts, Pan American received over $500,000 in premium in 2004 from business conducted in Massachusetts. In collusion with Trenwick in an unlawful scheme t commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG has made demand against Pan American under false claims for reinsurance coverage. On November 23, 2004, AIG sent Pan American an improper demand in the amount of $72,885, by reason of which Pan American has been damaged.

15. Plaintiff Phoenix Life Insurance Company, formerly Phoenix Home Life Mutual Insurance Company ("Phoenix Life"), is an insurance company domiciled in New York and licensed to do business in Massachusetts. In collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG has made demand against Phoenix Life under false claims for reinsurance coverage. On November 23, 2004, AIG sent Phoenix Life an improper demand in the amount of $2,713,228, by reason of which Phoenix Life has been damaged.

16. Plaintiff Reliance Standard Life Insurance Company ("RSL") is an insurance company domiciled in Illinois with an office in Boston, Massachusetts. RSL is licensed to do business in Massachusetts and received over $22 million in premium in 2004 from business conducted in Massachusetts. In collusion with Trenwick in an unlawful scheme to commit frauc and other torts against the plaintiffs, and in violation of c. 93A, AIG has made demand against RSL on false claims for reinsurance coverage. On November 23, 2004, AIG sent RSL an improper demand in the amount of $4,046,533, by reason of which RSL has been damaged.

17. Plaintiff Reliastar Life Insurance Company ("ING") is an insurance company domiciled in Minnesota. ING is licensed to conduct business in Massachusetts and maintains ar office in Boston, Massachusetts. ING received over $60 million in premium and annuity

6

considerations in 2004 from business conducted in Massachusetts. In collusion with Trenwick ii an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG has made demand against ING on false claims for reinsurance coverage. On November 23, 2004, AIG sent ING an improper demand in the amount of \$225,249, by reason o which ING has been damaged.

18.  Plaintiff Sun Life Assurance Company of Canada ("Sun Life") is domiciled in Ontario, Canada, but has its United States home office in Wellesley Hills, Massachusetts and is licensed to conduct business in Massachusetts. Sun Life received over \$63 million in premium in 2004 from business conducted in Massachusetts. In collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG has made demand against Sun Life on false claims for reinsurance coverage. On November 23, 2004, AIG sent Sun Life an improper demand in the amount of \$3,573,408, by reason of which Sun Life has been damaged.

19.  Plaintiff Sun Life is also the successor-in-interest by acquisition to Facility member Clarica Life Insurance Company ("Clarica"). In collusion with Trenwick in an unlawfu scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG has made demand against Clarica on false claims for reinsurance coverage. On November 23, 2004, AIG sent Clarica an improper demand in the amount of \$9,042,784, by reason of which Sun Life as successor-in-interest to Clarica has been damaged.

20.  Plaintiff Swiss Re Life & Health America, Inc. ("Swiss Re") is an insurance company domiciled in Connecticut and licensed to conduct business in Massachusetts. Swiss Re received over \$95 million in premium in 2004 from business conducted in Massachusetts. In collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the

7

plaintiffs, and in violation of c. 93A, AIG has made demand against Swiss Re on false claims fo reinsurance coverage. On November 23, 2004, AIG sent Swiss Re an improper demand in the amount of $4,012,599, by reason of which Swiss Re has been damaged.

21. Plaintiff Swiss Re is also the successor-in-interest to Facility member Mercantile & General Company ("M&G"). On November 23, 2004, in collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93/ AIG has made an improper demand (mistakenly addressed to Generali USA Life Reassurance Company as successor to Mercantile and General Life Reassurance Company of America) in the amount of $109,328 representing M&G's proportionate share of the AIG demand against the LDG Facilities, by reason of which Swiss Re has been damaged.

22. Plaintiff Transamerica Occidental Life Insurance Company ("Transamerica") is an insurance company domiciled in Iowa and licensed to conduct business in Massachusetts. In collusion with Trenwick in an unlawful scheme to commit fraud and other torts against the plaintiffs, and in violation of c. 93A, AIG made demand against Transamerica on false claims fc reinsurance coverage. On November 23, 2004, AIG sent Transamerica an improper demand in the amount of $195,154, by reason of which Transamerica has been damaged.

**Defendants**

23. Defendant AIG is an insurance holding company with registered offices in New York, New York. With operations in more than 130 countries and jurisdictions, AIG is the largest commercial and industrial insurance group in the United States. It is the parent of variou insurance company subsidiaries, a number of which are licensed to conduct business in Massachusetts. AIG transacted business or caused tortious injury by an act or omission in the Commonwealth.

181239.5

8

24.     Defendant Trenwick (in its own right and as successor-in-interest to Chartwell Reinsurance Company by acquisition in December 2002) is an insurance company domiciled in Connecticut. Trenwick transacted business or caused tortious injury by an act or omission in the Commonwealth.

## FACTS

### Plaintiffs' Massachusetts Reinsurance Facilities

25.     The plaintiffs are each members of one or more of three groups of reinsurers called "facilities" that were formed by their members to share reinsurance risks underwritten for the facilities by a common managing agent. The facilities are the Special Risk Reinsurance Facility, the Special Risk Reinsurance Facility II and the Occupational Accident & Health Facility (each, an "LDG Facility;" collectively, the "LDG Facilities").

26.     The managing agent for each of the LDG Facilities is LDG Reinsurance Corporation ("LDG"), formerly known either as SRRF Management Incorporated or LDG Reinsurance Underwriters. Throughout its existence LDG has been incorporated in Massachusetts and, at all relevant times, has maintained its principal place of business in Wakefield, Massachusetts.

27.     Each of the plaintiffs entered into an agency contract with LDG, called a "participation agreement" (collectively, the "Participation Agreements"), under which they each granted LDG authority to underwrite reinsurance risks, manage claims and undertake accounting activities for the LDG Facilities on their behalf. Under the Participation Agreements, LDG collected premiums, handled any reported losses and paid claims on behalf of the plaintiffs from its offices in Massachusetts.

181239.5

9

28.     As the managing agent of the LDG Facilities, LDG was at the center of the

relationships among all parties to this action. In implementing their wrongful scheme to unfairl

saddle the plaintiffs with false obligations based on inflated and unsubstantiated reinsurance

claims, the defendants prepared and transmitted numerous demand letters, position statements,

threats and other communications, and engaged in false and bad faith negotiations, that were

intended to be and were received and acted upon primarily and substantially in Massachusetts

through plaintiffs' agent LDG.

## LDG Arranges For A "Fronting Member" To Issue Reinsurance For The Facilities

29.     In 1997, LDG, acting as managing agent of the LDG Facilities, arranged for

Trenwick's predecessor-in-interest Chartwell Reinsurance Company ("Chartwell") to participate

as a member in each of the LDG Facilities. Chartwell entered into a Participation Agreement by

which it took a share of any reinsurance contracts issued by the LDG Facilities and granted LDG

authority to underwrite risks, manage claims and undertake accounting activities on its behalf

with respect to that reinsurance.

30.     That same year, Chartwell also agreed to act as one of the member "fronting"

reinsurers for the LDG Facilities. As a fronting reinsurer, Chartwell issued reinsurance contract

to third parties such as various AIG insurance company subsidiaries and then reinsured ("ceded"

those risks by placing 100% of the risk with one or more of the LDG Facilities in which it

participated as a member (the "Fronting Arrangement"). LDG arranged for and managed this

Fronting Arrangement from its offices in Wakefield, Massachusetts.

31.     Chartwell negotiated with LDG for a fee of 2.5% of the "gross net reinsurance

premiums" for all reinsurance risks that were fronted under the Fronting Arrangement. This

amount was deducted by Chartwell from the premium ceded to the plaintiffs as members of the

181239.5

10

LDG Facilities. Pursuant to the Fronting Arrangement, between 1997 and 2002 the LDG Facilities paid substantial sums to Chartwell and its successor-in-interest Trenwick.

32.     In an attempt to further formalize its role as fronting member, Chartwell sought to have LDG recommend that each Facility member enter into a written "fronting agreement" with Chartwell explicitly authorizing the ceding of Chartwell-fronted reinsurance to the LDG Facilities. This agreement, to be governed by Massachusetts law, was known as the Quota Shar Retrocessional Agreement ("QSA") and was designed and intended, once executed, to operate in conjunction with the Participation Agreements establishing LDG's underwriting and claims authority.

33.     In a series of letters and other communications between February 1998 and September 1998, Chartwell directly and through LDG pressed the various plaintiffs to sign the QSA. When certain plaintiffs raised concerns about the scope of the authority granted to Chartwell under the QSA, Chartwell characterized the agreement's provisions as merely (i) reiterating the authority already granted to LDG by each of the members of the LDG Facilitie under the Participation Agreements and (ii) confirming that the Participation Agreements allowed the ceding of risks from Chartwell to the LDG Facilities.

34.     To further induce the plaintiffs to sign the QSA, Chartwell often repeated that as party to a Participation Agreement, Chartwell had itself granted LDG oversight authority as its chosen managing agent and that this authority was incorporated by reference in any fronting contract. For example, on April 30, 1998, Chartwell's in-house counsel Kathleen M. Carroll wrote to LDG Facility member Manulife, making the following representations regarding the relative functions of LDG and the fronting reinsurer under the proposed terms: "Where Chartwell fronts for the pool, LDG acts as Chartwell's agent and decisions made by LDG are

11

binding on Chartwell . . .. As a practical matter, LDG will be performing all the actual claims handling as agent for Chartwell." LDG saw this correspondence and agreed with the description provided by Chartwell.

35. The QSA was never fully executed. Certain of the plaintiffs declined to rely on Chartwell's representations and rejected the QSA as drafted. On information and belief, lacking full participation by the LDG Facility members, Chartwell never signed the QSA.

36. In December 2002, Trenwick acquired Chartwell by merger and stepped into Chartwell shoes as successor-in-interest to its representations, rights and obligations under the Participation Agreement and the Fronting Arrangement with the LDG Facilities. As the chosen managing agent under Chartwell's Participation Agreement, to which Trenwick succeeded, LDG continued to act on behalf of Trenwick in underwriting risks, managing claims and undertaking accounting activities on all reinsurance ceded to the LDG Facilities.

37. From December 2002 through August 2003, Trenwick continued to front reinsurance risks for the LDG Facilities, issuing no fewer than eleven separate reinsurance contracts to various AIG subsidiaries providing coverage for their workers' compensation, occupational accident and industrial aid insurance risks. On information and belief, Massachusetts risks were among the AIG insurance policies reinsured by Trenwick and ceded 100% to the LDG Facilities and proportionately to the plaintiffs as Facility members. The plaintiffs paid almost $300,000 in fees to Trenwick for fronting the reinsurance of the AIG risks

## The Defendants' Wrongful Scheme to Make False Claims

38. AIG and Trenwick are bound by duties, imposed by reinsurance industry custom and recognized by law, to act in "utmost good faith" in their course of dealings with the plaintiff and with LDG as the authorized agent of the plaintiffs and the LDG Facilities.

39.    Reinsurance is an insurance contract issued to an insurer, known as the "ceding insurer" or "cedent." The contract is one of "indemnity" and only provides a right for reimbursement when the cedent incurs losses by making payments to resolve claims under insurance policies or reinsurance contracts it has issued to others. The reinsurer owes nothing unless and until the cedent has paid a claim and can present a record of the payment as a "paid loss." The Trenwick Fronting Arrangement with the LDG Facilities is an arrangement providing indemnity, and any right Trenwick has to reimbursement from the LDG Facilities can arise only after Trenwick itself has paid out funds to resolve claims made under the reinsurance contracts i issued for the LDG Facilities.

40.    Reinsurance typically spreads risk along a chain of insurers. Direct insurers cede portions of the risk they assume to reinsurers. Those reinsurers cede (technically, "retrocede") portions of the risk they assume to other reinsurers (otherwise called "retrocessionaires"). As the chain lengthens and fans out, risk can be distributed among an ever larger number of companies.

41.    Various AIG insurance company subsidiaries, Chartwell (and later Trenwick) and the plaintiffs together formed a number of such reinsurance chains, each of similar but not identical structure. Each of the reinsurance chains along which the AIG-related risks were distributed (the "AIG-Risk Chains") were structured in pertinent part substantially as follows: (a) as a fronting reinsurer, Chartwell would issue reinsurance contracts to the AIG insurance company subsidiaries; (b) Chartwell would then cede those risks by placing 100% of the risk with one of the LDG Facilities, of which Chartwell (and later Trenwick) and each of the plaintiffs were members; (c) each of Chartwell (and later Trenwick) and the plaintiffs as members of the LDG Facilities would then (i) retain a proportionate share of the risk and (ii) cede the remaining proportionate share (up to 95%) to a different LDG Facility and/or to another

retrocessionaire. The exact percentages ceded and the identities of the LDG Facilities and other acting as retrocessionaires in each of the AIG-Risk Chains varied among the eleven AIG contracts ceded or purported to be ceded to the LDG Facilities through Chartwell.

42.    Each of the reinsurance contracts in the AIG-Risk Chains is a contract of indemnity. Under each of these contracts, the insured party must pay out a claim and present record of payment as a "paid loss" before it is to be reimbursed by the reinsurers at the next leve in the chain.

43.    The cedent owes a duty to its reinsurers to competently handle claims before paying them. It owes a duty to provide timely notice of loss. The cedent owes duties to provide specific and relevant claim information to its reinsurers, to allow account audits by the reinsurers, and in general, to cooperate with the reinsurers. Because the cedent must first pay o funds to resolve claims before seeking reimbursement from its reinsurers, the ceding insurer has a financial incentive to investigate the legitimacy of any claims made under the reinsurance contracts it has obtained before fronting funds to pay those claims. The requirement that Trenwick first incur "paid losses" before seeking payment from the LDG Facilities provided the plaintiffs, as Facility members, with an added safeguard against invalid or fraudulent claims.

44.    The cedent's duties are also enforced by an obligation of absolute and perfect candor. By industry tradition and by law, all the cedent's duties must be performed with "utmos good faith" or *uberrimae fidei,* meaning openess and honesty and the absence of any concealment or deception.

45.    Without *uberrimae fidei* there would be no reinsurance. Reinsurance works only if the reinsurance premium is less than the original premium received by the cedent. For the reinsurance premium to be less, reinsurers cannot duplicate the costs of the primary insurer in

14

evaluating risks and handling claims. Thus, unlike the arms-length relationships typical among sophisticated parties in other industries, reinsurers must rely completely on the ceding insurer to provide accurate, complete and timely information regarding the nature of risks and extent of losses.

46.    The duty of *uberrimae fidei* underlies the entire reinsurance relationship. Each party in a chain of reinsurance relationships must act in utmost good faith with respect to its obligations to report and investigate claims. The good faith performance of these obligations is intended to benefit and be relied upon by each and every indemnifying party up the chain.

47.    As a fellow and fronting member of the LDG Facilities, Trenwick owed to each of the plaintiffs a duty of *uberrimae fidei* in all dealings regarding the LDG Facilities, including deference to LDG, the managing agent of the Facilities as chosen by Trenwick and each of the plaintiffs under their respective Participation Agreements.

48.    In making claims against the plaintiffs for alleged losses reinsured by Trenwick, AIG owed to Trenwick and to each of the plaintiffs a duty of *uberrimae fidei* requiring AIG, among other things, to submit only valid claims and to provide proof of the insured losses underlying such claims. On information and belief, AIG acted at all relevant times with the knowledge that Trenwick was ceding 100% of the AIG-related business to the LDG Facilities and to the plaintiffs as members of the LDG Facilities, and AIG understood and intended that its dealings with Trenwick would have a direct financial impact on the plaintiffs.

49.    As set forth in detail below, AIG and Trenwick have each breached the duties set forth above by engaging in a pattern of fraudulent, unfair and deceptive practices to unfairly manipulate Trenwick's fronting arrangement to assert improper and inflated coverage claims against the LDG Facilities and the plaintiffs.

15

50.    In April 2003, Trenwick reported to LDG that AIG was requesting a full and fina settlement or "commutation" of all past, current and future liabilities owed by Trenwick under the fronted reinsurance contracts issued to AIG's subsidiaries. Since that date, LDG, in keeping with its duty of utmost good faith as managing agent of the LDG Facilities, has repeatedly sought fair access to AIG claim records to confirm the reasonableness and accuracy of the alleged outstanding losses. At all relevant times, AIG knew that LDG, as the manager of the LDG Facilities, was the chosen agent for Trenwick and the plaintiffs for handling any incoming claims. AIG could have and should have acted in utmost good faith by providing LDG, as agent for the plaintiffs, with access to any records substantiating its alleged claims. AIG has persistently refused LDG access to such records, and AIG's refusal has precluded LDG from handling, adjusting or paying any of the losses AIG alleges under the contracts fronted by Trenwick.

51.    Contrary to its obligations of utmost good faith, AIG inserted itself into the claim resolution process and engaged in a pattern of evasive and deliberately obstructionist behavior calculated, on information and belief, to avoid disclosure of unlawful practices resulting in inflated claims in its workers' compensation and other books of business. Further, at all relevant times, AIG has pursued a strategy of negotiating unfairly using escalating demands for payment intended, on information and belief, to co-opt Trenwick in the pursuit of unsupportable claims payments and a restructuring of AIG's reinsurance coverage at the expense of the plaintiffs as Facility members.

52.    Because of its deteriorating financial circumstances, Trenwick colluded with AIG in carrying out these unfair, deceptive and tortious activities, the nature, purpose and effect of which were to hijack LDG's rightful gatekeeper role in handling claims for the LDG Facilities

and to give unfair advantage to AIG in passing off inflated loss reports in its workers' compensation and other books of business.

## AIG Seizes the Opportunity to Co-opt Trenwick

53.    In the fall of 2002, the Trenwick group of companies faced a financial crisis. Trenwick's parent, Trenwick America Corporation, suffered a loss of public confidence in its stock. Onerous financing covenants were widely reported as restricting its options for recovery As Trenwick's management looked for ways to ensure its survival, on information and belief, AIG took advantage of Trenwick's financial vulnerabilities by improperly pressuring for payment of insufficiently substantiated losses reported by AIG subsidiaries under the reinsuranc contracts Trenwick fronted for the LDG Facilities.

54.    When, in April 2003, AIG requested a commutation of liabilities allegedly owed under Trenwick-fronted reinsurance contracts, Trenwick reported AIG's demand to LDG as manager of the LDG Facilities and as agent for Trenwick and the plaintiffs in handling any incoming claims. Writing from its offices in Wakefield, Massachusetts on or about June 26, 2003, LDG responded to AIG's coverage demands by requesting an audit of the accounts of the various covered AIG subsidiaries to verify the reported losses. The requested audits were to be coordinated through the offices of C. Mindy Kipness, Director of Corporate Receivables for AIG.

55.    AIG, on information and belief, knew the reported workers' compensation and other claims of its insurance company subsidiaries were grossly inflated. In a deliberate strateg to avoid having to disclose the improper claims accounting practices of its subsidiaries, AIG itself responded to LDG's request to verify purported losses by taking actions that threatened Trenwick's solvency.

17

56.    On July 9, 2003, less than two weeks after receiving LDG's audit request, AIG

Associate General Counsel Eric S. Kobrick sent a formal demand letter to LDG at its offices in

Wakefield, Massachusetts. Addressing LDG in its capacity as "Managing General Agent of

Trenwick," AIG purported to exercise rights under "special termination provisions" governing i

subsidiaries' reinsurance contracts with Trenwick to "accelerate Trenwick's obligations,

requiring immediate settlement of all present and future obligations." By AIG's unsubstantiated

accounting, the "losses" owed by Trenwick totalled almost $130 million. AIG demanded that

Trenwick "remit payment promptly."

57.    On July 25, 2003, LDG again requested an on-site audit of the records of AIG's

subsidiaries to verify each of the components of the $130 million claim, including outstanding

losses, unsettled balances, and incurred but not reported claims ("IBNR"). On August 11, 2003,

outside counsel Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), on information and belief

acting on instruction from AIG's management, wrote LDG threatening arbitration proceedings

against Trenwick if the demanded $130 million payment was not promptly made. The demand

letter further stated that access to the records of AIG subsidiaries would only be granted on the

condition that LDG first agree to render its due diligence meaningless by executing on behalf of

the plaintiffs a "clean, irrevocable, evergreen letter of credit" covering the entire amount of the

disputed claims.

58.    On August 20, 2003, Trenwick's parent, Trenwick America Corporation, filed for

Chapter 11 protection in the United States District Court for the District of Delaware.

59.    On information and belief, on or about August 27, 2003, having provided no

information to substantiate its claims, AIG instructed Gibson Dunn to commence an arbitration

proceeding against Trenwick seeking payment in full of the approximately $130 million "claim,'

181239.5                                                    18

together with interest and attorneys' fees. The demand for arbitration was delivered into and, a:
intended, was received and acted upon by LDG within the Commonwealth of Massachusetts.
The letter commencing arbitration was sent to LDG at its offices in Wakefield, Massachusetts
and "require[d] LDG/Trenwick" to appoint an arbitrator within one month.

60.    Upon information and belief, Trenwick submitted to voluntary supervision by th
Connecticut Department of Insurance during this time period or shortly thereafter.

## AIG and Trenwick Collude to Give AIG Unfair
## Leverage in Negotiations for a Novation

61.    From July 2003 through June 2004, AIG engaged in negotiations with LDG, in ii
role as managing agent of the LDG Facilities and the plaintiffs, ostensibly to resolve obstacles to
payment of the claims asserted by the AIG subsidiaries. In reliance on AIG's purported good
faith, LDG sent to and received from AIG and its affiliates numerous letters and other
communications concerning a review of the accounts of the reinsured AIG subsidiaries. AIG's
express and implied representations as to its good faith in the course of its dealings with LDG
were delivered to LDG in Massachusetts and, as intended by AIG, were received and relied upoi
by the plaintiffs through their agent LDG in Massachusetts.

62.    At this same time, Trenwick was on notice that LDG was negotiating with AIG
on behalf of the LDG Facilities and that pursuant to the terms of its Participation Agreement and
the representations of its predecessor-in-interest Chartwell, Trenwick was required to defer to th
authority of LDG as managing agent with regard to such negotiations. On September 8, 2003,
LDG formally wrote Trenwick to advise that the LDG Facility members "will not be bound by
any settlement reached or any payments made by Chartwell to AIG in the absence of their
express preapproval."

63.     On September 18, 2003, Trenwick responded to LDG and promised plaintiffs "a full and fair opportunity to review and comment upon the proposals" before any commutation with AIG would be agreed. Trenwick's representations were delivered to LDG in Massachusett and, as intended by Trenwick, were received and relied upon by the plaintiffs through their ager LDG in Massachusetts.

64.     The plaintiffs now know that during the period July 2003 through June 2004, AI( entered into secret negotiations with the financially vulnerable Trenwick aimed at securing an improper commutation of various reinsurance contracts Trenwick had issued to AIG subsidiarie In so doing, AIG acted in bad faith and induced Trenwick to engage in conflicts of interest and other breaches of Trenwick's fiduciary duties to the plaintiffs.

65.     During this same period of time, Trenwick intentionally excluded LDG from its negotiations with AIG, effectively preventing LDG from acting as the gatekeeper to improper claims ceded to the LDG Facilities. Trenwick's actions prevented LDG from exercising the authority, granted to it by Chartwell (and later by Trenwick) and the plaintiffs under their respective Participation Agreements, to act as agent for the LDG Facilities in managing claims and undertaking accountings on behalf of the Facility members. Trenwick prevented LDG from fulfilling its role of representing the plaintiffs' interests as Facility members.

66.     On information and belief, AIG induced Trenwick to improperly usurp LDG's rightful role as manager of the LDG Facilities and to breach the duty of utmost good faith owed to the plaintiffs by offering the financially distressed company a global settlement favorably resolving all of Trenwick's reinsurance liabilities to AIG, of which the risks ceded to the LDG Facilities comprised only a part.

67.    With respect to the reinsurance contracts issued to AIG subsidiaries by Trenwick and ceded to the LDG Facilities, Trenwick faced demands that it pay claims nominally totalling more than $130 million with a present value of more than $81 million. AIG offered a deal permitting Trenwick to resolve those claims for an up-front cash outlay by Trenwick of only $4 million.

68.    Under the deal, AIG would fund Trenwick's "payment" of most of the remaining risk by accepting a non-recourse promissory note from Trenwick in the amount of approximatel $73 million. This financing would relieve Trenwick of the need to secure funds to pay AIG's claims from either the other members of the LDG Facilities or the general marketplace. Given Trenwick's perilous financial situation at the time, such financing would have been available only on terms unfavorable to Trenwick.

69.    In exchange for such favorable treatment from AIG, Trenwick agreed to assist AIG in unfairly pressuring the plaintiffs to enter a novation on terms dictated by AIG by which the plaintiffs would assume direct responsibility to AIG and succeed to Trenwick's contractual rights and obligations under its contracts with the AIG subsidiaries. In the event negotiations fo the novation failed, Trenwick agreed to participate with AIG in a commutation to cram down a settlement on the plaintiffs by (a) issuing a promissory note to AIG, (b) presenting AIG's wrongfully inflated coverage claim to the plaintiff members of the LDG Facilities as a "paid loss" under the QSA, and (c) assigning to AIG any and all "collection rights" Trenwick had against the plaintiff Facility members under the QSA.

70.    AIG's first attempt to force novation came in early December 2003, when AIG and Trenwick jointly confronted LDG with the fruits of their private negotiations. At that time, AIG demanded that a novation on its proposed terms be executed by the end of January 2004. If

LDG did not agree and the plaintiffs, as Facility members, did not pay as demanded, AIG and Trenwick threatened to go forward with a commutation under which Trenwick would pass through to the LDG Facilities as "paid losses" roughly $80 million in AIG claims. AIG's demand was delivered to LDG in Massachusetts and, as intended by AIG and Trenwick, was to be acted upon by plaintiffs through their agent LDG in Massachusetts.

71.    On February 3, 2004, LDG initiated negotiations with AIG. In a letter also copie to Trenwick, LDG set out proposed terms for a novation acceptable to the Facility members. Over the next five months, LDG continued its good faith efforts to negotiate a novation of the AIG risks. At the time, LDG and the plaintiffs believed AIG to be negotiating in good faith wit LDG to achieve a mutually agreed novation, and to have ceased its talks with Trenwick seeking an improperly collusive commutation. Plaintiffs now know that over these five months, AIG clandestinely continued to collude with Trenwick against the LDG Facilities' interests.

72.    On May 25, 2004, AIG wrote to LDG threatening that unless a novation on AIG terms was finalized by June 15, 2004, all reinsurance accepted by the LDG Facilities from the AIG subsidiaries with Trenwick as a front would be "automatically commuted" and AIG would seek the full amount of each Facility member's share immediately, by arbitration if necessary. On information and belief, over the next two weeks AIG revealed to LDG that Trenwick had agreed to enter a written commutation agreement under which Trenwick would pass through to the LDG Facilities as "paid losses" roughly $80 million in AIG claims if the novation AIG proposed was not accepted. Each of these demands was delivered to LDG in Massachusetts and as intended by AIG and Trenwick, was to be acted upon by plaintiffs through their agent LDG in Massachusetts.

73.     By letter dated June 24, 2004, several of the plaintiffs advised Trenwick that the ultimatum received from AIG by the LDG Facilities through LDG as managing agent was "completely unacceptable" and that the proposed commutation did not conform to "established principles of good faith within the reinsurance industry." As members of the LDG Facilities, these plaintiffs objected to Trenwick's not having carried out an independent valuation of the AIG claims and to Trenwick's failure to assess the validity of the $80 million commutation figure. The June 24 letter advised Trenwick that further discussion of novation would require full disclosure of all relevant facts, including copies of any agreements or side letters between AIG and Trenwick, as well as information regarding the calculation of IBNR and any data, assumptions and actuarial methodologies that might support AIG's demand. Neither AIG nor Trenwick provided the requested information to LDG or to any of the plaintiffs.

## The Suspicious "Commutation" By AIG and Trenwick

74.     Instead, on June 30, 2004, Trenwick entered into an unlawful agreement with AIG commuting more than $81 million in fraudulently inflated and unsubstantiated claims asserted by AIG subsidiaries under reinsurance contracts Trenwick fronted for and ceded to the Facility members (the "Commutation"). On information and belief, the Commutation was negotiated by and under the direction of Christopher Milton, AIG Vice President of Reinsurance The Commutation agreement was signed on behalf of AIG by a Vice President of AIG and by Jane Byrne, AIG Assistant General Counsel. On information and belief, the Commutation was negotiated on behalf of Trenwick by its Chief Executive Officer, David B. Semeraro, and signed by Trenwick under his authority. AIG and Trenwick are the only signatories to the Commutatio agreement.

75.    By letters dated August 19 and October 11, 2004, respectively, and addressed ar delivered to plaintiffs' agent LDG at its offices in Wakefield, Massachusetts, AIG and Trenwicl each advised the plaintiffs that the Commutation would pass AIG's inflated claims through to tl LDG Facilities as "paid losses" to be covered by the LDG Facility members.

76.    The Commutation was intended to give a lawful patina to AIG and Trenwick's unlawful scheme to present fraudulent claims for payment under various reinsurance contracts.

77.    Both AIG's demand for more than $130 million and the "paid loss" amount of $81 million passed on by Trenwick were on their face inconsistent with reasonable commercial and actuarial expectations given the age and nature of the underlying coverages.

78.    AIG's demand for acceleration of the liabilities under reinsurance contracts with Trenwick required AIG to present actuarial projections for IBNR, *i.e.,* for anticipated claims tha assume the existence of insured events, such as an industrial accident, for which a claim has not yet been reported to the insurer. To be valid, IBNR projections must use sound actuarial methods applied to assumptions reasonably related to historical experience. Of the almost $130 million demanded from Trenwick by AIG, less than $15 million represented claims paid or identified for payment, while more than $116 million represented IBNR projections of unasserted, unpaid claims. Offered baldly, without supporting detail, and in light of both AIG and Trenwick's continuing refusal to provide any back-up information and audit, AIG's IBNR claims were (and remain) highly suspicious.

79.    The AIG claims are suspect because, without explanation, they assert losses that are contrary to reasonable commercial and actuarial expectations. Prevailing industry experienc demonstrates that workers' compensation claims are usually asserted early in the coverage cycle, and by 2004 a book of such business written in 1999 and 2000 would characteristically have a

significantly lower percentage of "losses" in the form of IBNR than AIG presented. AIG's reported ratio of $15 million paid and reserved claims to $116 million of IBNR claims on this book of business was, at best, an aberration. Further, more than $117 million of the total exposure was disproportionately attributed to a single risk – an unexpected pattern that, without explanation, raises questions as to whether losses were properly allocated among the contracts and whether required retentions were properly applied.

80. Despite the suspicious characteristics of AIG's claims, Trenwick and AIG passed AIG's claims through to the LDG Facilities in a "paid loss" report. The paid loss report and the wrongful representations it contained were delivered to and intended to be acted on by plaintiffs through their agent LDG in Massachusetts.

81. The "paid loss" report is also suspect because it lacks any signs that Trenwick followed common and expected industry practice to substantiate underlying claims before payment. With so large a portion of the claim based on projected IBNR, industry custom and prudent claims-handling practice required Trenwick either directly or through LDG to, at a minimum, audit AIG's actuarial calculations and underlying claims history. Yet Trenwick's "paid loss" report to the LDG Facilities is strikingly devoid of evidence that Trenwick conducted even a minimal coverage analysis. The paid loss report fails to provide basic supporting detail required of AIG both under its reinsurance contracts and by industry custom and practice. On information and belief, Trenwick did not require AIG to report how it calculated either the purported IBNR or the present value of its claims. To the contrary, Trenwick informed the members of the LDG Facilities that AIG was unwilling to provide calculations for IBNR and other amounts. Nor did Trenwick exercise its contractual right under its contracts with AIG to open the transaction up to the light of day by demanding review by an independent auditor.

25

82.    In addition, Trenwick's "payment" of over $73 million of the Commutation by funds obtained from AIG under a promissory note with terms and conditions more favorable to Trenwick than otherwise available in the marketplace, and secured by an assignment to AIG of collection rights against the LDG Facilities and the plaintiffs, is unorthodox and contrary to the practices and standards of the reinsurance industry.  Under the QSA, Trenwick was required to pay the full amount of the Commutation and then seek indemnity from the LDG Facilities.  This requirement was designed to ensure that Trenwick would have a strong financial interest in investigating the validity of claims under the reinsurance contracts it issues and in paying only legitimate obligations.  The benefits Trenwick realized under its promissory note to AIG eliminated Trenwick's financial incentive to negotiate on behalf of itself and the LDG Facilities and, on information and belief, induced Trenwick to accept Commutation terms dictated by AIG

83.    Trenwick furthered AIG's scheme to defraud the LDG Facilities and the plaintiffs by among other things (a) failing to exercise basic care on behalf of the LDG Facilities, care that the plaintiffs, as LDG Facility members, were entitled to and expected from Trenwick as a fronting member, and (b) colluding with AIG to avoid review by LDG of the validity of AIG's fraudulently inflated claims by presenting those claims as "paid losses" under the Trenwick Fronting Arrangement.

### AIG and Trenwick Collude to Pass Off
### AIG's Inflated Claims as Paid Losses

84.    Since the Commutation, AIG has flatly refused the LDG Facilities any access to its records. Without such information, LDG and the plaintiffs, as LDG Facility members, cannot assess the validity of AIG's claims, a determination that Trenwick, as fronting member, should have made, but entirely failed to pursue. On information and belief, AIG's stonewalling extends

beyond its own files to continuing pressure on Trenwick to refuse cooperation with reasonable requests made by LDG on behalf of the Facilities to investigate the paid loss claim.

85.     On or about August 19, 2004, Trenwick wrote LDG as managing agent of the LDG Facilities to request that LDG collect payment in settlement of Trenwick's claim for indemnification on paid losses relating to the AIG-Risk Chains. In support of its claim, Trenwick presented a purported "paid loss" of $4 million, representing Trenwick's payment to AIG to consummate the wrongful Commutation, for which it seeks reimbursement of 95%. By collecting on this claim, Trenwick seeks to reduce to approximately $200,000 its total outlay fo: resolving in excess of $130 million in asserted AIG liabilities.

86.     As a cedent to retrocessionaires in various AIG-Risk Chains, Trenwick owes a duty of *uberrimae fidei* requiring Trenwick to submit only valid claims and to provide proof of the insured losses underlying the claim. In seeking reimbursement for its participation in a fraudulent and deceptive scheme with AIG, Trenwick has breached this duty to the plaintiffs who act as its retrocessionaires in the AIG-Risk Chains.

87.     On November 23, 2004, AIG sent each plaintiff a demand for payment of its alleged proportional share of the $73,360,000 promissory note, addressing the demand letter bot to each plaintiff's own offices and to the plaintiff's attention, care of LDG in Wakefield, Massachusetts. LDG was also included as a direct recipient of each demand letter.

88.     Each of the November 23, 2004 letters offered to release the addressed plaintiff from any obligation under the promissory note if the plaintiff signed the previously unacceptable novation agreement. Absent payment or novation, AIG threatened to commence arbitration within 30 days.

27

89.     As cedents to retrocessionaires farther out the AIG-Risk Chains, the plaintiffs o'

a duty of *uberrimae fidei* requiring each of them, among other things, to submit only valid clair

and to provide proof of the insured losses underlying the claim. In light of AIG's and

Trenwick's continuing refusal to provide any supporting documentation for the claims they hav

asserted, neither LDG nor any of the plaintiffs has agreed, nor consistent with the duty of

*uberrimae fidei* could they agree, to either option offered by AIG.

### AIG and Trenwick Collude to Collect the Spoils of Their Unfair Practices in Massachusetts

90.     AIG, with Trenwick's collusion, has manufactured more than $81 million in

fraudulent "paid losses" for which it has asserted almost $73 million in wrongful demands for

payment under reinsurance contracts ceded to the plaintiffs. AIG, in conspiracy with Trenwick,

continues to assert these claims in Massachusetts despite knowing of their falsity.

91.     The false liabilities manufactured by AIG in an unlawful scheme with Trenwick

have implicated the plaintiffs' forecasting and reserving practices, and have required the

victimized plaintiffs to expend significant time and money on the investigation of and defense

against these claims and demands for payment.

92.     On January 10, 2005, acting as purported assignee under the Commutation of

Trenwick's collection rights, AIG initiated arbitration asserting rights under the QSA to enforce

its unlawful demands for payment. AIG sent each plaintiff a demand for arbitration. The

demands were addressed both to each plaintiff's own offices and in care of LDG in Wakefield,

Massachusetts. The arbitration has commenced in Massachusetts.

93.     Trenwick, as purported assignor under the Commutation of its rights under the

QSA, is not a party to the arbitration.

28

94.     To protect their rights, the plaintiffs have been required to respond to AIG's arbitration demand, and have to date expended very substantial sums in investigating and defending themselves from AIG's manufactured claims.

95.     By reason of the foregoing wrongful acts on the part of Trenwick and AIG, each of the plaintiffs has suffered damage, and their damages continue to rise.

## COUNT I

### Chapter 93A Claim (Against AIG and Trenwick)

96.     The plaintiffs adopt by reference the allegations of ¶¶ 1-95, above.

97.     This claim is brought pursuant to G.L. c. 93A, § 11.

98.     Each of the plaintiffs, and both of the defendants, have been engaged in trade or commerce within the meaning of c. 93A, § 11.

99.     The following conduct by AIG and Trenwick, as described above in greater detai constitutes unfair and deceptive acts or practices committed in Massachusetts in willful and knowing violation of c. 93A:

(a)     Providing improperly inflated calculations of losses in demanding accelerated payment on each of the eleven separate reinsurance contracts issued to AIG subsidiaries by Chartwell and ceded to the LDG Facilities;

(b)     Presenting the fraudulently inflated Commutation amount as a paid loss under the Trenwick QSA;

(c)     Demanding that each of the eighteen plaintiff insurance companies pay its purported share of the fraudulently inflated Commutation amount;

(d)     Presenting wrongful and fraudulent paid loss figures to Trenwick's retrocessionaires in the AIG-Risk Chains;

29

(e)     Trenwick's failure to meet its duty of care owed to the plaintiffs by not investigating AIG's claims;

(f)     Purporting to negotiate in good faith with LDG, the plaintiffs' representative, while simultaneously agreeing to, but not disclosing, the Commutation;

(g)     Negotiating in bad faith in an attempt to pressure LDG and the plaintiffs to settle the dispute on terms favorable to AIG; and

(h)     Wrongfully filing a demand for arbitration in Massachusetts to enforce fraudulen claims for reinsurance coverage.

100.    The defendants AIG and Trenwick, by their actions set forth above, have engaged in a course of unfair and deceptive acts and practices aimed at wrongfully collecting almost $73 million from plaintiffs.

101.    The defendants have carried out a pattern of evasive and obstructionist conduct in rejecting all attempts by LDG, on behalf of the plaintiffs, to obtain information supporting the claims, and have given no indication of a willingness to reciprocate LDG's desire to amicably resolve the parties' disputes.

102.    The defendants' actions and statements in connection with their improper scheme were aimed at, and were acted upon by, LDG, on behalf of the plaintiffs, in Wakefield, Massachusetts.

103.    The defendants' unfair and deceptive acts and practices occurred primarily and substantially in Massachusetts.

104.    The defendants' conduct constitutes unfair and deceptive acts and practices in violation of c. 93A.

105.    The defendants knowingly and wilfully violated c. 93A.

30

## COUNT III

### Civil Conspiracy (Against AIG and Trenwick)

113.    Plaintiffs adopt by reference the allegations of ¶¶ 1-112, above.

114.    By various wrongful acts, defendants AIG and Trenwick have acted in concert ir furtherance of a common plan to commit insurance fraud and other unlawful acts, the object of which was to defraud the plaintiff insurance companies with respect to reinsurance coverage claims presented against the LDG Facilities.

115.    By various wrongful acts, defendants AIG and Trenwick have acted in concert ir furtherance of a common plan to wrongfully file a demand for arbitration to enforce fraudulent claims for reinsurance coverage, the object of which is to defraud the plaintiff insurance companies.

116.    The plaintiff insurance companies as a result have each suffered damages in an amount to be determined at trial.

## COUNT IV

### Aiding and Abetting Breach of Fiduciary Duty (Against AIG)

117.    Plaintiffs adopt by reference the allegations of ¶¶ 1-116, above.

118.    Trenwick had a fiduciary obligation to the plaintiff insurance companies to act under a duty of *uberrimae fidei* or utmost good faith in all dealings with respect to its role as a fronting reinsurer for the LDG Facilities and LDG Facility members. AIG, as Trenwick's reinsured, with knowledge of Trenwick's relationship to plaintiffs, also owed plaintiffs a duty of utmost good faith.

119.    By various wrongful acts, AIG induced Trenwick to breach that fiduciary duty by participating in a scheme to commit insurance fraud by presenting AIG's wrongfully inflated

106.    The plaintiff insurance companies have each suffered a loss of money or property in an amount to be determined at trial as a result of the defendants' violations of c. 93A.

## COUNT II

### Common Law Fraud (against AIG and Trenwick)

107.    Plaintiffs adopt by reference the allegations of ¶¶ 1-106, above.

108.    AIG and Trenwick each individually and together engaged in wrongdoing that included the making of numerous materially false and misleading statements, representations and omissions with respect to their course of dealings and the Commutation of AIG reinsurance contracts, including but not limited to the presentation of AIG's wrongfully inflated coverage claim to the plaintiffs, as LDG Facility members, as a "paid loss" and Trenwick's presentation of a fraudulent and wrongful paid loss to its retrocessionaires in the AIG-Risk Chains.

109.    Each of AIG and Trenwick knew that their statements, representations and omissions were materially false and misleading with respect to presently existing or past facts.

110.    Each of AIG and Trenwick intended that each plaintiff rely to its detriment on their materially misleading false and misleading statements, representations and omissions in processing, reserving for, investigating and paying the fraudulent and inflated claims under the AIG reinsurance contracts ceded to the LDG Facilities.

111.    Each of the plaintiffs reasonably relied upon such false and misleading statements, representations and omissions to its detriment by, among other things, entering a false liability on its books, paying unnecessary fees and expending monies for the investigation and defense against claims fraudulently created.

112.    The plaintiff insurance companies as a result have each suffered damages in an amount to be determined at trial.

coverage claim to the plaintiffs, as LDG Facility members, as a "paid loss" under plaintiffs' QS with Trenwick, to assist AIG in pursuing a wrongful demand for arbitration to enforce fraudule claims for reinsurance coverage and to commit other torts to the plaintiffs' detriment.

120.    At the time AIG, a sophisticated insurer, approached Trenwick, AIG understood that Trenwick was acting as a fronting reinsurer for the LDG Facilities and knew of the duties that arise from that relationship.

121.    By acting in concert with Trenwick to commit insurance fraud, to fraudulently inflate the Commutation amount and to commit other torts, AIG knowingly participated in and facilitated Trenwick's breach of fiduciary duty.

122.    The plaintiff insurance companies as a result have each suffered damages in an amount to be determined at trial.

## COUNT V

### Tortious Interference With Contractual Relations (Against AIG)

123.    Plaintiffs adopt by reference the allegations of ¶¶ 1-122, above.

124.    One or more of the plaintiffs had a contractual relationship with Trenwick by which Trenwick acted as a fronting reinsurer for the LDG Facilities.

125.    AIG was not a party to that contractual relationship, but knew that Trenwick had business relationship with the plaintiffs that was manifested by a contract specifying that Trenwick would act on the plaintiffs' behalf as a fronting reinsurer.

126.    AIG knowingly and intentionally induced Trenwick to breach its contractual duties as a fronting reinsurer and to commute AIG's reinsurance contract in a manner detrimenta to the plaintiffs and unduly favorable to AIG; to present AIG's wrongfully inflated coverage claim to the plaintiffs, as LDG Facility members, as a "paid loss" under plaintiffs' QSA with

33

Trenwick; and to enable AIG pursuant to a wrongful assignment of Trenwick's contract right

pursue an improper demand for arbitration to enforce fraudulent insurance claims.

127.    AIG had no justification for interfering with the contractual relations between

Trenwick and the plaintiffs; AIG's motive was to commute the claims in an unreasonable man

that would unfairly benefit AIG.

128.    The plaintiff insurance companies as a result have each suffered damages in an

amount to be determined at trial.

## COUNT VI

### Declaratory Judgment (Against Trenwick)

129.    Plaintiffs adopt by reference the allegations of ¶¶ 1-128, above.

130.    Trenwick has demanded that the plaintiffs indemnify the $4 million cash paymer

Trenwick made to AIG under the Commutation.

131.    The plaintiffs have rejected Trenwick's unjustified and wrongful demand for

indemnification.

132.    There is an actual controversy about whether the plaintiffs are required to

indemnify Trenwick for the $4 million Trenwick paid to AIG under the Commutation.

133.    The declaratory judgment sought by the plaintiffs would properly resolve this

controversy.

### RELIEF SOUGHT

Each of the plaintiff insurance companies demands judgment against the defendants AIG

and Trenwick as follows:

a.    For compensatory damages;

b.     For disgorgement of all benefits received by either defendant as a result ‹

their fraud or unfair and deceptive acts and practices;

    c.     For treble damages under c. 93A;

    d.     For punitive and exemplary damages;

    e.     For interest and costs;

    f.     For a declaration that the plaintiffs serving as retrocessionaires in the AI(

Risk Chains are not required to indemnify Trenwick for the $4 million Trenwick paid to

AIG under the Commutation; and

    g.     For such other and further relief as the Court may deem just.

By its attorneys,

Scott P. Lewis (BBO # 298740)
Steven L. Schreckinger (BBO # 447100)
PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100

Of counsel:

Joseph T. McCullough, IV
Kathy L. McFarland
Robin C. Dusek
LOVELLS
One IBM Plaza
330 North Wabash Avenue
Suite 1900
Chicago, IL 60611
(312) 832-4400

July 6, 2005

**I HEREBY ATTEST AND CERTIFY ON**

<u>SEPT. 20, 2005</u>, THAT THE
**FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.**

**MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT**

BY:

    ASSISTANT CLERK.

181239 5

# NOTIFY

COMMONWEALTH OF MASSACHUSETTS

7-8

3

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 05-2788 BLS
(Judge van Gestel)

*notice
sent
7/8/05
JPX
J.S.S.
P + P.
J.T m e L.IV
K.X.m e f.
R.R.D.
X.
(mld)*

AMERICAN REINSURANCE COMPANY; AMERICAN
UNITED LIFE INSURANCE COMPANY; FIRST ALLAMERICA
FINANCIAL LIFE INSURANCE COMPANY; GUARDIAN LIFE
INSURANCE COMPANY OF AMERICA; HARTFORD LIFE
INSURANCE COMPANY; HOUSTON CASUALTY COMPANY;
JOHN HANCOCK LIFE INSURANCE COMPANY (USA);
INSURANCE CORPORATION OF HANNOVER; MONUMENTAL
LIFE INSURANCE COMPANY; PAN AMERICAN LIFE
INSURANCE COMPANY; PHOENIX LIFE INSURANCE
COMPANY; RELIANCE STANDARD LIFE INSURANCE
COMPANY; RELIASTAR LIFE INSURANCE COMPANY;
SUN LIFE ASSURANCE COMPANY OF CANADA; SWISS RE LIFE & HEALTH
AMERICA; and TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY

vs.

AMERICAN INTERNATIONAL GROUP and TRENWICK
AMERICAN REINSURANCE CORPORATION

## NOTICE OF ACCEPTANCE INTO
## BUSINESS LITIGATION SESSION

This matter has been accepted into the Suffolk Business Litigation Session. It has been assigned to Judge Allan van Gestel.

Hereafter, as shown above, all parties must include the initials "BLS" at the end of the docket number on all filings. Also, Judge van Gestel's name must be included.

Counsel for the plaintiff(s) is hereby advised that within seven (7) days of the filing of an appearance, answer, motion or other response to the complaint by or on behalf of the defendant(s) which has been served with process within the time limitation of Mass. R. Civ. P. Rule 4(j), or such other time as may be modified by the Court, he or she shall send notice thereof to Judge van Gestel's Session Clerk, Courtroom 1309, Suffolk Superior Court, Three Pemberton Square, Boston, MA 02108.

Upon receipt of such notice, the Court will issue a Notice of Initial Rule 16 Conference for purposes of meeting with all counsel to plan for the litigation and resolution of this matter. If possible, the Court requests counsel for the plaintiff(s) to confer with counsel for the

defendant(s) and to suggest to the Court a range of dates available for all parties for this purpose and to include those dates in the notice. The Court, however, retains the discretion to schedule the hearing at a time that fits within its own schedule.

DATED:      July 7, 2005

Allan van Gestel, Presiding Justice
Business Litigation Session

I HEREBY ATTEST AND CERTIFY ON

SEPT.    20,    2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

COVER SHEET  **B.L.S.**

Superior Court Department
County: SUFFOLK

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| American Reinsurance Company, et al. | American International Group, et al. |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE | ATTORNEY (if known) |
|---|---|
| Scott P. Lewis<br>Palmer & Dodge LLP, 111 Huntington Avenue<br>Boston, MA  02199-7613    (617) 239-0100<br>Board of Bar Overseers number: 298740 | Unknown |

### Origin Code

Original Complaint

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| BE.1 | Unfair and Deceptive<br>Acts and Practices | *<br>( B ) | ( ) Yes    ( X ) No |

**The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.**

This is an action by a large number of insurers that were members of various "reinsurance facilities" managed in Massachusetts that provided insurance to cover the risk of losses on certain contracts of reinsurance that defendant Trenwick "fronted" for the facilities and issued to various subsidiaries of defendant AIG.  The plaintiffs allege that AIG colluded with Trenwick to manipulate their intricate reinsurance relationships so that the plaintiffs would face wrongful demands for payment of almost $73 million in improper and inflated claims by AIG.  This case presumptively qualifies as a complex commercial case for the BLS because it involves claims of breaches of fiduciary duties owed in complex reinsurance transactions; fraud and misrepresentations by AIG and Trenwick; unfair and deceptive trade practices;  and tortious interference with contractual relations.  The case arises in the arcane context of reinsurance facilities and presents what are likely to be both hotly contested and complex factual, legal questions that can be expected to require complex case management.

and

**\*A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.**

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____    DATE: 7/6/05

AOTC-6 mlc005-11/99
A.O.S.C. 1-2000

I HEREBY ATTEST AND CERTIFY ON

SEPT. 20, 2005, THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

$8\,x$  .     5

## COMMONWEALTH OF MASSACHUSETTS

$q$-$\ell$'

Suffolk, ss.                                                    **Superior Court**

|  |  |  |
|---|---|---|
| **AMERICA REINSURANCE COMPANY, ET AL.** | ) ) ) ) | |
| **Plaintiff(s)** | ) ) | |
| v. | ) ) | **Civil Action No. 05-2788-BLS** |
| **AMERICAN INTERNATIONAL GROUP** | ) ) ) | |
| **and** | ) ) ) | |
| **TRENWICK AMERICA REINSURANCE CORPORATION** | ) ) ) | |
| **Defendant(s)** | ) ) ) | |

### ASSENTED TO MOTION EXTENDING TIME FOR DEFENDANT TRENWICK AMERICA REINSURANCE CORPORATION TO ANSWER, MOVE, OR OTHERWISE RESPOND TO THE COMPLAINT

Defendant Trenwick America Reinsurance Corporation ("Trenwick") respectfully

files this assented to motion for the Court to extend until September 15, 2005 the date by

which Trenwick is required to answer, move, or otherwise respond to the Complaint.

Counsel for Plaintiffs, America Reinsurance Company, et al., has assented to this

extension of time and it is the first such extension filed in this action.

WHEREFORE, Trenwick respectfully requests that the Court extend until

September 15, 2005 the date by which it is required to answer, move, or otherwise

respond to the Complaint.

AMERICA REINSURANCE
COMPANY, ET AL.
By its attorneys

Scott P. Lewis (BBO #298740)
Steven L. Schreckinger (BBO #447100)
Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100

TRENWICK AMERICA
REINSURANCE CORPORATION
By its attorney

Mark W. Batten (BBO #566211)
Eben A. Krim (BBO #652506)
Proskauer Rose LLP
One International Place, 22nd floor
Boston, MA 02110
(617) 526-9700

Dated: August 24, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all
counsel of record by first-class mail, postage prepaid, this 24th day of August, 2005.

Eben A. Krim

I HEREBY ATTEST AND CERTIFY ON

SEPT. 20, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY:

ASSISTANT CLERK.

*Suffolk Superior Civil # 05 - 2788*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SUFFOLK SUPERIOR COU
CIVIL CLERK'S OFFICE

2005 SEP 19 P 4: 3

MICHAEL JOSEPH DONOVA
CLERK / MAGISTRATE

```
                                          )
AMERICAN REINSURANCE COMPANY,             )  05 CV 1 1 8 4 0 MLW
et al.,                                   )
            Plaintiffs,                    )    CIVIL ACTION NO:
                                          )
    v.                                    )    MAGISTRATE JUDGE
                                          )
AMERICAN INTERNATIONAL GROUP              )
and TRENWICK AMERICA                      )
REINSURANCE CORPORATION,                  )
            Defendants.                    )
                                          )
```

RECEIPT # 66780
AMOUNT $250
SUMMONS ISSUED N/A
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK
DATE 9/22/05

## DEFENDANTS' NOTICE OF REMOVAL
## TO THE UNITED STATES DISTRICT COURT

Pursuant to the provisions of the Convention on the Recognition and Enforcement of
Foreign Arbitral Awards, 21 U.S.T. 2517 (the "New York Convention") and the federal statute
implementing the New York Convention, 9 U.S.C. §201, *et seq.*, Defendants the relevant
member and associated companies of American International Group, Inc. ("AIG") and Trenwick
America Reinsurance Corporation ("Trenwick") hereby give notice of their removal of this
action to the United States District Court for the District of Massachusetts from the Superior
Court of Massachusetts, in and for Suffolk County, Business Litigation Session, and in support
thereof would respectfully show as follows:

1.      AIG and Trenwick are defendants in a civil action brought in the Superior Court
of the Commonwealth of Massachusetts, in and for Suffolk County, Business Litigation Session,
styled as *American Reinsurance Company, et al. v. American International Group and Trenwick
America Reinsurance Corporation,* Civil Action No. 05-2788-BLS (the "*American Re* Action").

2.     AIG and Trenwick were served with a copy of the Summons and Complaint in the

*American Re* Action sometime after July 7, 2005. A true copy of the Summons and Complaint

in the *American Re* Action, as served on AIG and Trenwick, is attached to this Notice of

Removal as Exhibit A.

3.     This case is within the original jurisdiction of this Court and AIG and Trenwick

are entitled to remove the *American Re* Action to this Court based upon the provisions of the

New York Convention and 9 U.S.C. §205, which provides:

> When the subject matter of an action or proceeding in a State court
> relates to an arbitration agreement or award falling under the
> Convention, the defendant or the defendants may, at any time
> before the trial thereof, remove such action or proceeding to the
> district court of the United States District Court for the district and
> division embracing the place where the action or proceeding is
> pending. The procedure for removal of causes otherwise provided
> by law shall apply, except that the ground for removal provided in
> this section need not appear on the face of the complaint but may
> be shown in the petition for removal. For purposes of Chapter 1 of
> this title [9 U.S.C.S. §§1 *et seq.*] any action or proceeding removed
> under this section shall be deemed to have been brought in the
> district court to which it is removed.

4.     AIG and Trenwick are entitled to remove the *American Re* Action to this Court

because the "subject matter" of the action "relates to an arbitration agreement . . .falling under

the Convention."

5.     Specifically, the subject matter of the *American Re* Action relates to certain

reinsurance agreements that each contain an arbitration clause. Depending upon the applicable

situation, Plaintiff Sun Life Assurance Company of Canada ("Sun Life") is bound by the

reinsurance agreements (including the arbitration clause contained therein) either as a party to

the agreement; as a successor-in-interest to another entity that is a party to the agreement; and/or

because it accepted the rights, benefits and obligations under the agreement.

2

957631v1

6.    For example, Sun Life is a party to an agency contract known as a "Participation Agreement" with LDG Reinsurance Corporation which contains an arbitration clause. [Complaint, ¶27]. Moreover, Sun Life executed the "Quota Share Retrocessional Agreement" effective as of July 1, 1997 between and among Trenwick and various retrocessionaires, including Sun Life. The Quota Share Retrocessional Agreement contains an arbitration clause. A true copy of the Quota Share Retrocessional Agreement, including Sun Life's signature thereon, is attached to this Notice of Removal as Exhibit B. Moreover, Sun Life has participated in an arbitration relating to the Quota Share Retrocessional Agreement since January 2005.

7.    As alleged in the Complaint, Sun Life is domiciled in Toronto, Canada. [Complaint, ¶19]. Attached as Exhibit C to this Notice of Removal is a true copy of a letter from the Office of the Superintendent of Financial Institutions Canada dated August 17, 2005 confirming that Sun Life is organized under the laws of Canada with its principal place of business in the City of Toronto, Province of Ontario, Canada.

8.    As set forth above, each of the relevant agreements contains an arbitration clause. Specifically, both the Participation Agreement and the Quota Share Retrocessional Agreements at issue in the *American Re* Action provide, in relevant part:

> As a condition precedent to any right of action hereunder, any dispute or difference hereafter arising with reference to the interpretation, application or effect of this Agreement or any part hereof, whether arising before or after termination of this Agreement, shall be referred to a Board of Arbitration consisting of two Arbitrators and an Umpire, all of whom shall be active or retired executive officers of insurance or reinsurance companies being experienced in the class of business under consideration having no direct or indirect financial interest in either party or its affiliates.

9.    Since Sun Life is a foreign commercial entity, the reinsurance agreements that are the subject of the *American Re* Action relate to international commercial arbitration agreements

957631v1

3

that fall within the scope of the New York Convention. Accordingly, AIG and Trenwick are entitled to remove the *American Re* Action to this Court pursuant to the provisions of 9 U.S.C. §205.

10.    AIG and Trenwick's Notice of Removal is timely because it is filed before the trial of the *American Re* Action has occurred. Indeed, the only matters that have taken place in the *American Re* Action are agreements to enlarge the time for the Defendants to respond to the Complaint.

11.    Removal to this Court is proper because this Court is the district and division in which the *American Re* Action is currently pending.

12.    This Court has jurisdiction over this case pursuant to the provisions of 9 U.S.C. §203, which states:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28 [28 U.S.C.S. §460] shall have original jurisdiction over such an action, regardless of the amount in controversy.

13.    Pursuant to 28 U.S.C. §1446(d), AIG and Trenwick will file a notice of the filing of this Notice of Removal (including a copy thereof) with the Clerk of the Superior Court of the Commonwealth of Massachusetts, in and for Suffolk County, Business Litigation Session, promptly upon the docketing of the Notice of Removal and the *American Re* action in this Court.

14.    Pursuant to 28 U.S.C. §1447(d) and Local Rule 81.1, AIG and Trenwick will request that the Clerk of the Superior Court of the Commonwealth of Massachusetts, in and for Suffolk County, Business Litigation Session, provide certified or attested copies of all records and proceedings in the *American Re* Action and certified or attested copes of all docket entries

TRENWICK AMERICA
REINSURANCE CORP.

By its attorneys,

Eben A. Krim, Esq.
**PROSKAUER ROSE LLP**
One International Place, 22nd Floor
Boston, MA  02110
(617) 526-9700
(617)526-9899 (facsimile)


Of counsel:

Margaret Dale, Esq.
**PROSKAUER ROSE LLP**
1585 Broadway
New York, NY  10036-8299
(212) 956-9064
(212)969-2900 (facsimile)

Dated: September 9, 2005

## CERTIFICATE OF SERVICE

I, John T. Harding, counsel for Defendant American International Group, hereby certify

that on September 9, 2005, I served a copy of the foregoing document by messenger or federal

express on all known counsel of record.

John T. Harding

957631v1

6

thereon. AIG and Trenwick will cause such attested or certified copies of the state court record to be filed with this Court within thirty (30) days hereof as required by Local Rule 81.1.

15.    Counsel for AIG and Trenwick are duly admitted to practice before this Court and sign this Notice of Removal in accordance with the requirements of Fed.R.Civ.P. 11.

16.    All defendants in the *American Re* Action have joined in this Notice of Removal.

**WHEREFORE,** AIG and Trenwick respectfully request that the above-referenced action now pending in the Superior Court of the Commonwealth of Massachusetts, in and for Suffolk County, be removed from that Court to the United States District Court for the District of Massachusetts.

> **AMERICAN INTERNATIONAL GROUP, INC.**
>
> By its attorneys,
>
> Michel R. Aylward BBO #024850
> John T. Harding BBO #221270
> **MORRISON MAHONEY LLP**
> 250 Summer Street
> Boston, MA 02210
> (617) 439-7558
> (617) 342-4888 (facsimile)
>
> Of Counsel:
>
> William A. Maher
> **WOLLMUTH MAHER & DEUTSCH LLP**
> 500 Fifth Avenue
> New York, New York 10110
> (212) 382-3300
> (212) 382-0050 (facsimile)

957631v1

5