UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMERICAN REINSURANCE COMPANY, *et al.*,<br>Plaintiffs,<br><br>v.<br><br>AIG, Inc. and TRENWICK AMERICA REINSURANCE CORPORATION,<br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO:<br>05-CV-11840-MLW |

## DEFENDANT AIG, INC.'S MOTION TO STRIKE

Pursuant to Fed.R.Civ.P.12(f), defendant AIG, Inc., on behalf of its member and associated companies ("AIG, Inc.), moves that the Court strike from the record of this case "Plaintiffs' Supplemental Memorandum [sic] Apprising the Court of New Developments" dated August 25, 2006 (PACER No. 51)("Plaintiffs' Memorandum"). There is no procedural basis nor substantive purpose for Plaintiffs to have filed this document. Put simply, its contents are entirely irrelevant to the issues that are before the Court for hearing on September 6, 2006. Accordingly, Plaintiffs' Memorandum should be stricken from the docket. In further support of this motion, AIG, Inc. states as follows:

1.    The Court has scheduled a hearing on AIG, Inc.'s Motion to Stay Proceedings Pending Arbitration (PACER No. 3); Defendant Trenwick America Reinsurance Corporation's ("Trenwick") Motion to Stay Proceedings (PACER No. 9); and Plaintiffs' Renewed Motion to Remand (PACER No. 35) for September 6, 2006. Pursuant to the scheduling orders entered by the Court, briefing on these motions was completed by February 16, 2006.

2.    Plaintiffs did not have a right under the Court's scheduling orders or the applicable Federal Rules of Civil Procedure and Local District Court Rules to file a further submission in support of their Renewed Motion to Remand.  Plaintiffs did not seek leave of Court to do so, but instead filed the Memorandum without first obtaining the permission of the Court.  Accordingly, Plaintiffs' Memorandum is procedurally improper and should be stricken.

3.    There is no basis for Plaintiffs to claim that the filing of a further memorandum was appropriate based upon so-called "new developments."  The irrelevant matters concerning Mr. Milton which Plaintiffs seek to inject into the procedural motions pending before the Court are not "new."  The proceedings brought by the Securities and Exchange Commission and the Department of Justice against Mr. Milton were commenced in early February 2006 and the "Affidavit of Christian Milton" [Ex. 1 to Plaintiffs' Memorandum] was obtained by the Plaintiffs on or about February 6, 2006.[1]  Plaintiffs have not provided any explanation as to why it took them more than six months after obtaining the affidavit to file it with the Court if it was relevant to their pending motion.

4.    In fact, neither the Milton Affidavit nor any of the other matters set forth in Plaintiffs' Memorandum have any bearing on, or relevance to, the procedural motions that are scheduled for hearing on September 6, 2006.  The only issues before the Court are (1) whether the Court has jurisdiction over this action, which was removed by AIG, Inc. and Trenwick from the Massachusetts Superior Court, and (2) if the Court agrees that it has jurisdiction, whether the action should be stayed pending the completion of an arbitration commenced by AIG, Inc. against the Plaintiffs that is scheduled for hearing in November 2006. The Milton Affidavit has no bearing upon the Court's statutory jurisdiction over this action, nor upon Trenwick's and AIG, Inc.'s entitlement to a stay pending completion of an arbitration that is approaching its

---

[1] Indeed, the Milton Affidavit (which was prepared by Plaintiffs' counsel) suggests that it was in the works well before that date since it bears a draft date of December 2005.

conclusion.  The fact that Mr. Milton has been indicted on certain charges that are entirely

unrelated to the transaction that is the subject of this dispute and the pending arbitration, as well

as the fact that Mr. Milton provided Plaintiffs with an affidavit stating that he would invoke his

Fifth Amendment privilege if called to testify in this matter, are completely irrelevant to the

issues presently before the Court.  The Plaintiffs' attempt to insert these issues into the case is

mud-slinging, pure and simple.

     5.     Plaintiffs suggest that, because they procured an affidavit from Mr. Milton in

which he stated that he would invoke his Fifth Amendment privilege as to all questions (even as

to his background), the Court should draw an inference that his testimony would prove the

substance of the Plaintiffs' claims here.  Plaintiffs' assertion is unfounded.  There is nothing in

Mr. Milton's Affidavit that in any way addresses the substance of the reinsurance commutation

that is the subject of this case.  The affidavit does not differentiate potential questions regarding

the commutation from the host of other matters (even employment history) as to which Mr.

Milton would refuse to testify if called as a witness.  There is nothing in the Complaint filed

against Mr. Milton and others [Ex. 2 to Plaintiffs' Memorandum] which suggests that the action

against Mr. Milton relates to the reinsurance commutation; indeed, it is obvious from the

Complaint that the SEC is not proceeding against Mr. Milton in connection with the transaction

at issue here.

     6.     Plaintiffs' claim that the invocation by a non-party witness of his Fifth

Amendment privilege "automatically" creates an "inference" that the allegations of Plaintiffs'

Amended Complaint against AIG, Inc. are true is entirely inconsistent with applicable law.  The

First Circuit Court of Appeals has held that even a party's invocation of the Fifth Amendment

privilege is insufficient to establish the merits of a claim before trial:

> We acknowledge our reservations about the bankruptcy court's
> decision to draw a negative inference against Marrama, at the
> summary judgment stage, on the basis of his invocation of a Fifth

> Amendment privilege. It is clear that the bankruptcy court can draw an inference at trial from a party's invocation of a Fifth Amendment privilege, *see In re Carp*, 340 F.3d 15, 23 (1st Cir. 2003). But we have expressed doubt as to whether a court can draw the same inference at the summary judgment stage, where all reasonable inferences must be drawn for the non-movant. *See Mulero-Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 678 (1st Cir. 1996)(explaining that a party's invocation of the Fifth Amendment in discovery does not alter requirement that inferences be drawn in favor of summary judgment non-movant); *see also United States v. 4003-4005 5th Ave.*, 55 F.3d 78, 83 (2d Cir. 1995)(noting that invocation of the Fifth Amendment privilege does not alter evidentiary burdens (*citing United States v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983)); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 389-94 (7th Cir. 1995)(holding that non-movant's invocation of the Fifth Amendment privilege does not free the summary judgment movant from showing that the evidence in the record requires judgment as a matter of law).

*Marrama v. Citizens Bank of Massachusetts*, 445 F.3d 518, 522-523 (1st Cir. 2006). The fact that such an "inference" is improper at the summary judgment stage demonstrates why the Court cannot draw such an "inference" in connection with a preliminary procedural motion.

7.    Further, the mere invocation of the Fifth Amendment privilege without independent corroborating evidence is insufficient to establish the merits of a claim. As the Ninth Circuit Court of Appeals noted:

> The *Baxter*[2] holding is not a blanket rule that allows adverse inferences to be drawn from invocations of the privilege against self-incrimination under all circumstances in the civil context. Rather, lower courts interpreting *Baxter* have been uniform in suggesting that the key to the *Baxter* holding is that such [an] adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer. *See, e.g., LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995); *Peiffer v. Lebanon Sch. Dist.*, 848 F.2d 44, 46 (3d Cir. 1988). Thus, an adverse inference can be drawn when silence is countered by *independent evidence* of the fact being questioned, but that same inference cannot be drawn when, for example, silence is the answer to an allegation contained in a complaint. *See Nat'l Acceptance Co. v. Bathalter*, 705 F.2d 924, 930 (7th Cir. 1983). In such circumstances, when there is no corroborating evidence to support the fact under inquiry, the proponent of the

---

[2] *Baxter v. Palmigiano*, 425 U.S. 308, 47 L.Ed.2d 810, 96 S.Ct. 1551 (1976).

> fact must come forward with evidence to support the allegation, otherwise no negative inference will be permitted.

*Doe By & Through Rudy-Glanzer v. Glanzer,* 232 F.3d 1258, 1264 (9th Cir. 2000)(original emphasis). Thus, even if the Court was considering the "merits" of the Plaintiffs' claims (which it should not), the mere fact of the Milton Affidavit standing alone is evidence of nothing.

        8.    Moreover, even cases relied upon by Plaintiffs have noted that when a party seeks to use the invocation of Fifth Amendment privilege by an employee (or former employee) to create an inference against the corporate employer, there must be a specific factual showing as to why such an inference is appropriate. As this Court has noted:

> *Veranda Beach [Club Ltd. Partnership .v. Western Sur. Co.,* 936 F.2d 1364 (1st Cir. 1991)] establishes no per se rule which insulates a corporate employer from any adverse inference based on an employee's invocation of his Fifth Amendment privilege. Rather, the court demanded that such an inference be based on something more than the mere existence of an employment relationship. "In a civil case, therefore, an individual's invocation of a personal privilege against self-incrimination cannot, without more, be held against his corporate employer in circumstances analogous to those at the bar." *Veranda Beach,* 936 F.2d at 1374. There was little evidence in *Veranda Beach* to show that the corporate employer was aware of or benefited from the employee's alleged wrongdoing. Indeed, the trial court directed the verdict in favor of the corporate defendant, while claims against the individual employee and several other corporate defendants went to the jury. *Id.* at 1369-70.
>
> Other courts that have considered the issue have permitted a jury, under certain circumstances, to draw an adverse inference against an employer when its employee invokes the Fifth Amendment privilege against self-incrimination. *RAD Serv., Inc. v. AETNA Casualty and Sur. Co.,* 808 F.2d 271, 274-278 (3d Cir. 1986); *Brink's Inc. v. City of New York,* 717 F.2d 700, 708-10 (2d Cir. 1983). Noting the sensitivity of the issue and potential for abuse, courts have eschewed a mechanical approach to determining whether the jury may hold the employee's silence against the employer. The courts have relied, instead, on a careful analysis of the facts to determine whether an adverse inference may be properly drawn against the employer.

*Data General Corp. v. Grumman Systems Support Corp.,* 825 F.Supp. 340, 352 (D. Mass. 1993).

Here, Plaintiffs have not offered the Court a "careful analysis of the facts" but simply a blanket

conclusion that because they obtained an affidavit from Mr. Milton in which he invoked his Fifth

Amendment privilege they are entitled to prevail on the substance of their claims. Such a

contention is wrong and, even if correct, could only be potentially relevant if the Court were

considering the merits of the claim, which it should not. Plaintiffs' Memorandum should be

stricken.

Respectfully submitted,

**AIG, Inc. on behalf of its member and
associated companies,**

By its attorneys,

*/s/ John T. Harding*

John T. Harding BBO #221270
Michael F. Aylward BBO #024850
**MORRISON MAHONEY LLP**
250 Summer Street
Boston, MA 02210
(617) 439-7558
Dated:  August 29, 2006          (617) 342-4888 (facsimile)

### CERTIFICATE OF CONFERENCE

Pursuant to Local District Court Rule 7.1, I certify that I have conferred with counsel for

the Plaintiffs regarding the above motion and no agreement could be reached.

*/s/ John T. Harding*

John T. Harding BBO #221270

### CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to
the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies
will be sent to those indicated as non-registered participants on August 29, 2006.

*/s/ John T. Harding*

John T. Harding, Jr. BBO #221270

- 6 -