UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN REINSURANCE COMPANY, *et al.*,
Plaintiffs,

v.

AIG, Inc. and TRENWICK AMERICA REINSURANCE CORPORATION,
Defendants.

CIVIL ACTION NO:
05-CV-11840-MLW

**DEFENDANT AIG, INC.'S SUPPLEMENTAL CITATION OF AUTHORITY**

In connection with the pending motions that are scheduled for hearing on September 6, 2006, defendant AIG, Inc., on behalf of its member and associated companies ("AIG, Inc.), respectfully directs the Court's attention to a case that was recently decided that is relevant to the pending motions and that was decided after all briefs had been filed. *Century Indemnity Co. v. Certain Underwriters at Lloyd's, London,* C.A. No. 05-CV-6004, 2006 U.S. Dist. LEXIS 34177 (E.D. Pa., May 18, 2006)(copy attached).

Respectfully submitted,

**AIG, Inc. on behalf of its member and associated companies,**

By its attorneys,

*/s/ John T. Harding*

John T. Harding BBO #221270
Michael F. Aylward BBO #024850
**MORRISON MAHONEY LLP**
250 Summer Street
Boston, MA 02210
(617) 439-7558
(617) 342-4888 (facsimile)

Dated: September 5, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 5, 2006.

*/s/ John T. Harding*

John T. Harding, Jr. BBO #221270

109GD5

Print Request: LEXSEE

Time of Request: September 05, 2006 09:49 AM EDT

Number of Lines: 268
Job Number: 1821:116654492

Client ID/Project Name: 10019456

Note:

Research Information:

Lexsee 2006 usdistlexis 34177

Send to: HARDING, JR, JOHN
MORRISON MAHONEY LLP
250 SUMMER ST
BOSTON, MA 02210-1134

LEXSEE 2006 USDISTLEXIS 34177

**CENTURY INDEMNITY COMPANY, Plaintiff, v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Defendants.**

**CIVIL ACTION NO. 05-CV-6004**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

***2006 U.S. Dist. LEXIS 34177***

**May 18, 2006, Decided**

**COUNSEL:** [*1] For CENTURY INDEMNITY COMPANY, AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA, Plaintiff: LAWRENCE A. NATHANSON, SIEGAL, NAPLERKOWSKI & PARK, MT. LAUREL, NJ; LLOYD A. GURA, MATTHEW J. LASKY, MOUND COTTON WOLLAN & GREENGRASS, NEW YORK, NY US.

For CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, SUBSCRIBING TO RETROCESSIONAL AGREEMENT NOS. 950548, 950549 AND 950646, Defendant: GREGORY W. BLACK, SUSAN P. JORDAN, LORD BISSELL & BROOK LLP, CHICAGO, IL; MARK J. HILL, MARK J. HILL & ASSOCIATES, PC, PHILADELPHIA, PA; THERESA DUCKETT, LORD BISSELL & BROOK LLP, CHICAGO, IL US.

**JUDGES:** LEGROME D. DAVIS, J.

**OPINIONBY:** LEGROME D. DAVIS

**OPINION:**

MEMORANDUM

LEGROME D. DAVIS, J.

Presently before the Court are Plaintiff's Motion to Remand and for Attorney's Fees, Costs and Expenses (Doc. No. 2), Defendants' Motion to Strike Certain Allegations in Plaintiff's Memorandum of Law in Support of its Motion to Remand and in the Affidavit of Joanne Caprice (Doc. No. 8), Defendants' Motion to Compel Arbitration (Doc. No. 11) and all responses and reply briefs thereto. For the following reasons, this Court denies Plaintiff's Motion to Remand, denies Defendants' Motion to Strike, and grants Defendants' Motion to [*2] Compel Arbitration.

I. FACTUAL BACKGROUND

Century Indemnity Company ("Century") brings this case in order to recover outstanding balances in the amount of $ 2,234,596, for which Certain Underwriters at Lloyd's, London ("Lloyd's") is allegedly liable under three Retrocessional Agreements. n1 See Complaint. The three Retrocessional Agreements provide that Lloyd's must reimburse INA, and therefore its statutory successor Century, 90% of INA's liability incurred under the XOL Treaties, which are contracts between Argonaut and INA. See Defs' Compel Arb. Memo., Ex. C, D, E ("Ret. Agree."). The Retrocessional Agreements state that "all terms and provisions of the [XOL Treaties] shall be applied to this agreement as if contained herein." Ret. Agree. P2. Article 15 of the XOL Treaties provides, in pertinent part, "if any dispute shall arise between the Company [Argonaut] and INA with reference to interpretation of this Agreement or their rights with respect to any transaction involved, the dispute shall be referred to three arbitrators, one to be chosen by each party and the third by the two so chosen." n2

n1 A retrocessional contract is a contract for the transfer of risk from a reinsurer to another reinsurer.

[*3]

n2 Article 15 also provides: "The decision of the arbitrators shall be final and binding on both [Argonaut] and INA. The expense of the arbitration and the arbitrators shall be equally divided between [Argonaut] and INA. Any such arbitration shall take place in San Francisco, California, unless some other location is mutually agreed upon by [Argonaut] and INA."

II. PROCEDURAL HISTORY

This case has a complicated procedural history. This case was originally filed in federal court on May 31, 2005. Defendants sought, and were granted, an extension of time to respond to the complaint, as they needed additional time to determine whether diversity jurisdiction existed. A few days before defendants were due to respond, on August 19, 2005, plaintiff voluntarily withdrew the case and refiled it in state court. On August 30, 2005, defendants stated that they would be willing to arbitrate the dispute, so the parties agreed to extend the time for defendants to respond to the complaint filed in state court. The parties negotiated regarding the terms of the arbitration and were unable to come to [*4] an agreement. On September 26, 2005, defendants filed their Answer with New Matter, which included, for the first time, defendants' claim that this matter must be arbitrated because the arbitration provision in the XOL Treaties was incorporated into the Retrocessional Agreements. On November 14, 2005, defendants removed this matter to federal court based on the existence of an international arbitration agreement.

III. MOTION TO REMAND

Defendants removed on the basis of *9 U.S.C. § 205*, which states that "where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, n3 the defendant or the defendants may, at any point before trial, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." Defendants claim that the subject matter of this action "relates to" an arbitration agreement falling under the Convention and, therefore, jurisdiction in this Court is proper. Plaintiff, on the other hand, argues that there is no arbitration agreement between plaintiff and [*5] defendants and, therefore, this matter should be remanded.

n3 The "Convention" is the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. In order for an agreement to fall under the Convention, it must arise out of a commercial relationship. In addition, at least one of the parties to the agreement must not be a U.S. citizen or, if the agreement is entirely between U.S. citizens, the agreement must have some "reasonable relation" with a foreign state. *9 U.S.C. § 202*. In the instant matter, plaintiff does not dispute that the agreement at issue arises out of a commercial relationship or that Lloyd's is not a U.S. citizen.

The Fifth Circuit has addressed a similar situation. See *Beiser v. Weyler, 284 F.3d 665 (5th Cir. 2002)*; see also *Bautista v. Star Cruises, 396 F.3d 1289, 1301 (11th Cir. 2005)* (applying Beiser). In Beiser, the defendant removed to federal court pursuant to *9 U.S.C. § 205*. Beiser, the plaintiff, [*6] moved to remand the case, arguing that since he was not a party to the arbitration agreement, *§ 205* did not apply and, therefore, the district court did not have subject matter jurisdiction over the matter. *Beiser, 284 F.3d at 666-68*. Interpreting *9 U.S.C. § 205* according to its "plain meaning," the Fifth Circuit held that

> whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement "relates to" the plaintiff's suit. Thus, the district court will have jurisdiction under *§ 205* over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of "relates to."

*Id. at 669*. After noting that Beiser's argument impermissibly conflated the jurisdictional inquiry with the merits inquiry, the Fifth Circuit found that "the language of *§ 205* strongly suggests [*7] that Congress intended that district courts continue to be able to assess the jurisdiction from the pleadings alone." *Id. at 671*. The definition of "relates to" adopted by the Fifth Circuit allows the district court to determine its jurisdiction from the petition for removal itself and "keeps the jurisdictional and merits inquiries separate." Id. The Fifth Circuit found that this broad definition was consistent with Congress's intent, as the "use of the broad phrase 'relates to' indicates that Congress's intent in *§ 205* was to confer jurisdiction liberally." *Id. at 674*.

The Fifth Circuit noted that, under *§ 205*, "the federal issue in cases will often be resolved early enough to permit remand to the state court for a decision on the merits. The arbitrability of a dispute will ordinarily be the first issue the district court decides after removal

under *§ 205.*" *Id. at 674-75.* The court noted that, if the district court decides that the arbitration clause does not provide a defense, and no other grounds for federal jurisdiction exist, the court must remand the case back to state court. *Id. at 675.*

This Court finds [*8] the reasoning in *Beiser* persuasive. The plain language of the statute supports a holding that jurisdiction is to be construed liberally. See *Suter v. Munich Reinsurance Co., 223 F.3d 150, 159 (3d Cir. 2000)* (noting that the Convention Act is a "broad removal statute"). The Court must accept jurisdiction before it can determine whether an arbitration agreement existed. See *Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 249, 71 S. Ct. 692, 95 L. Ed. 912 (1951)* (warning against confusing the question of whether jurisdiction exists with the question of whether the complaint states a cause of action); *Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 398 n.3 (3d Cir. 2004)* ("a pretrial ruling on jurisdictional facts should not be made if it constitutes a decision on the merits"). In the instant matter, an arbitration provision falling under the Convention could conceivably affect the outcome of the case. Therefore, the instant matter "relates to" an arbitration agreement falling under the Convention and *9 U.S.C. § 205* confers federal jurisdiction over this matter. Accordingly, plaintiff's motion to remand [*9] is denied.

IV. MOTION TO STRIKE

Defendants moves to strike (1) the affidavit of Joanne Caprice and (2) certain allegations contained in plaintiff's (Remand) Memorandum of Law. Defendants argue that these statements and the Caprice affidavit should be sticken pursuant to *Federal Rule of Evidence 401* and *402* as irrelevant and inadmissible. Plaintiff argues that the statements at issue were presented in support of Century's motion for attorney's fees, costs and expenses, which was contained in its motion to remand. This Court finds that the motion to strike is moot as it deals with the question of attorneys fees, an issue not reached by this Court. Therefore, defendants' motion to strike is denied.

V. MOTION TO COMPEL ARBITRATION

In the Motion to Compel Arbitration, the issue before the Court is whether an arbitration agreement exists between Century and Lloyd's. Defendant Lloyd's argues that the arbitration provision contained in the XOL Treaties is incorporated by reference into the Retrocessional Agreements and, therefore, plaintiff must be compelled to arbitrate this matter. Defs' Compel Arb. Memo. at [*10] 8-16. Plaintiff, on the other hand, argues that the arbitration agreement contained in the XOL Treaties is explicitly restricted to disputes between Argonaut and INA, now Century, and was incorporated into the Retrocessional Agreements to require Lloyd's to indemnify INA, now Century, for any obligations to Argonaut arising under the arbitration provisions of the XOL Treaties. Pl's Compel Arb. Resp. at 8-19.

A. Legal Standard

An arbitration provision in an international commercial agreement is governed by the Convention. *Flexi Van Leasing, Inc. v. Through Transportation Mutual Ins. Ass'n, 108 Fed. Appx. 35. 38 (3d Cir. 2004)* (citing *Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 448-49 (3d Cir. 2003)*). Pursuant to the Convention, a district court must order arbitration when faced with a dispute that is covered by an arbitration provision. Id. However, before it compels an unwilling party to arbitrate, the Court must engage in a limited review to ensure that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement. *9 U.S.C. § 4* [*11] ; *PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990)* overruled on other grounds by *Howsam v. Dean Witter Reynolds, 537 U.S. 79, 85, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002).*

When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability. *Trippe Manufacturing Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005).* The Federal Arbitration Act establishes a strong federal policy in favor of compelling arbitration over litigation, a policy which applies with "special force" in the field of international commerce. *Standard Bent Glass, 333 F.3d at 450* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)*); see also *Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000).* "When a contract, fairly read with these principles in mind, is susceptible of a construction that dictates arbitration, the congressional policy favoring that forum of dispute resolution may require the denial of judicial relief despite the possibility of fairly reading the contract to evidence a contrary intent." *Affiliated Food Distributors, Inc. v. Local Union No. 229, 483 F.2d 418, 420 (3d Cir. 1973).* [*12]

However, if a party has not agreed to arbitrate, the courts have no authority to mandate that it do so. *Bel-Ray Co. v. Chemrite Ltd., 181 F.3d 435, 444 (3d Cir. 1999)* (noting that "arbitration is strictly a matter of contract"); see also *United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)*; *United States SBA v. Barrack, No. 04-4083, 2006 U.S. App. LEXIS 11590 (3d Cir. 2006)* ("[d]espite the liberal policy in favor of enforcing arbitration agreements under the [FAA] ... a party cannot

be forced to arbitrate unless 'that party has entered into a written agreement to arbitrate that covers the dispute'"). A court must apply "traditional principles of contract interpretation" in order to determine whether an arbitration clause exists. n4 See *Affiliated Food Distrib., 483 F.2d at 420.*

n4 Neither party fully addressed whether federal or state law should apply to this issue. The Supreme Court has stated that "an agreement to arbitrate is valid, irrevocable and enforceable as a matter of federal law 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Perry v. Thomas, 482 U.S. 483, 492 n.9, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987)* (citing *9 U.S.C. § 2*). The Supreme Court continued, "thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally... A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law." Id.

The Third Circuit, post Perry, has held that "if the Arbitration Act applies, federal law, including general principles of contract law, determines whether there is a valid arbitration clause." *Medtronic AVE Inc. v. Advanced Cardiovascular Sys., 247 F.3d 44, 54 (3d Cir. 2001)*; see also *Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179 (3d Cir. 1999)* (citing Perry) (holding that questions concerning the interpretation and construction of arbitration agreements are to be determined by reference to federal substantive law and concluding that generally applicable contact defenses may be applied because federal courts may apply state law pursuant to section two of the FAA). But see Charles Davant IV, Note, Federal Court's Failure to Observe Controlling State Law Under the FAA, *51 Duke L.J. 521 (2001)* (noting that federal courts have disregarded the language in Perry and failed to use state law when deciding the threshold question of whether parties agreed to submit their dispute to arbitration).

[*13]

B. Discussion

The issue currently before this Court is whether Century and Lloyd's have entered into an agreement to arbitrate, i.e. whether there is "an 'express' and 'unequivocal' agreement between parties to arbitrate their dispute." *First Liberty Investment Group v. Nicholsberg, 145 F.3d 647, 650 (3d Cir. 1998)*. The Retrocessional Agreements between INA, now Century, and Lloyd's state that "[s]ubject to the percentage allocation in the preceding paragraph, n5 all terms and provisions of the [XOL Treaties] shall be applied to this Agreement as if contained herein." Ret. Agree. P2. Article 15 of the XOL Treaties provides that "[i]f any dispute shall arise between the Company [Argonaut] and INA with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, the dispute shall be referred to three arbitrators, one to be chosen by each party and the third by the two so chosen."

n5 The preceding paragraph states that "The Reinsurer shall pay to the Retrocessionaire 90% of all premiums paid to the Reinsurer under the [XOL Treaty], and the Retrocessionaire shall pay to the Reinsurer 90% of the losses and loss adjustment expenses paid by the Reinsurer thereunder." Ret. Agree. P1.

[*14]

Plaintiff argues that the arbitration provision incorporated into the Retrocessional Agreements specifically states that the provision is limited to disputes between Argonaut and INA. Plaintiff contends that the only reasonable interpretation of the provision is that "no agreement to arbitrate exists between Century and Lloyd's." Pl's Compel Arb. Resp. at 9. In support of this contention, plaintiff cites a Second Circuit case, *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42 (2d Cir. 1993)*, which held that a broadly worded arbitration clause which is not restricted to the immediate parties may be effectively incorporated by reference into another agreement. *Id. at 48* (applying New York law). The Second Circuit differentiated *Import Export Steel Corp. v. Mississippi Valley Barge Line Co., 351 F.2d 503 (2d Cir. 1965)*, where the clause specifically referred to the immediate parties to that contract. In Import Export, the Second Circuit refused to compel arbitration on the basis of a clause that provided for the arbitration of disputes "between the Disponent Owners and the Charterers" even though [*15] the clause had been incorporated by reference into the contract at issue. The court reasoned that "it would be unduly stretching the language of this arbitration clause to say that [a non-party] is one of the Disponent Owners or Charterers." *Id. at 506*. Defendants differentiate these cases, noting that, in the instant matter, plaintiff is a party to both agreements, whereas the parties in the cases cited

by plaintiff are "strangers to the underlying agreement." Defs' Compel Arb. Reply at 8.

Defendants argue that arbitration clauses incorporated by reference are valid and enforceable. Defendants rely on *John F. Harkins Co., Inc. v. Waldinger Corp., 796 F.2d 657, 662 (3d Cir. 1986)*. In Harkins, the subcontract contained a broad arbitration clause, and the principle contract contained a narrow arbitration provision. The subcontract's incorporation clause stated that the "subcontractor shall be bound by all provisions of these documents ... to which the Contractor is bound, and to the same extent." The Third Circuit found that it was not clearly erroneous for the district court to hold that the subcontract limited the scope of arbitration to the [*16] narrower arbitration provisions in the principle contract. Defendants note that the arbitration clause in the principle contract specifically applied to the "Owner" and the "Contractor." Defs' Compel Arb. Memo. at 9. Defendants argue that the Third Circuit, in finding that the principle contract's arbitration clause applied, did not find it determinative that the arbitration clause referred specifically to the "Owner" and the "Contractor."

A contract should be construed to give meaning to all its parts. *Pan Am Realty Trust v. Twenty One Kings, Inc., 408 F.2d 937, 939, 7 V.I. 39 (3d Cir. 1969)*; see also Defs' Compel. Arb. Memo. at 13-14; Pl's Compel Arb. Resp. at 18. Defendants argue that under plaintiff's interpretation, which restricts the arbitration provision to the named parties, the expressly incorporated provisions from the XOL Treaties are rendered meaningless, as "nearly each and every article" in the XOL Treaties explicitly refers to Argonaut and INA. Plaintiff responds that these provisions continue to have meaning since Lloyd's is responsible for 90% of the liability resulting from them under the Retrocessional Agreements. Plaintiff argues that paragraph 12 in [*17] the Retrocessional Agreements, which provides that, in the event that Lloyd's fails to pay an amount claimed, the parties will submit to the jurisdiction of any Court of competent jurisdiction, is rendered largely meaningless if the arbitration provision is incorporated.

Recently, the Third Circuit, in addressing whether an arbitration clause contained in a partnership agreement was incorporated by reference into a subscription agreement, found that the arbitration clause in the partnership agreement was "noteworthy" in two respects: (1) "the agreement to arbitrate was made between the general partner and the private limited partners -- i.e. the signatories to the agreement," and (2) another clause in the agreement emphasized that the arbitration clause was intended to apply to actions to enforce provisions of the partnership agreement and actions brought by the private limited partners. *Barrack, 2006 U.S. App. LEXIS 11590, at *8*. After noting that the party on whose behalf the action was brought was not a private limited partner, the Third Circuit found that the arbitration clause was not a broad provision. *Id. at *9* (noting that it "merely required the investors [*18] to agree to be bound by all of the terms and conditions of the Partnership Agreement"). The Third Circuit held that partnership agreement and the subscription agreement were separate, fully-integrated contracts, noting that the subscription agreement provided that "this instrument contains the entire agreement of the parties" and that the partnership agreement provided that "this Agreement constitutes the complete and exclusive statement of the agreement between the partners."

The contracts currently at issue are readily distinguishable from the contracts at issue in *Barrack*. In the instant matter, the Retrocessional Agreements do not provide that they "contain the entire agreement of the parties" or that they are the "complete and exclusive statement of the agreement." See id. Rather, the Retrocessional Agreements are intimately tied to the XOL Treaties, as they transfer the risk assumed by Century under the XOL Treaties from Century to Lloyd's. Unlike the contracts at issue in Barrack, the Retrocessional Agreements contain a broad incorporation provision, which states that "all terms and provisions" of the XOL Treaties "shall be applied to this Agreement as if contained [*19] herein." Simply, this provision incorporates all of the provisions contained in the XOL Treaties, including the arbitration provision.

The arbitration provision refers to the specific parties, "the Company," i.e. Argonaut, and "INA," now Century. However, most of the provisions contained in the XOL Treaties refer to Argonaut and INA. This Court does not find it determinative that the specific parties are named. Rather, this Court finds that the Retrocessional Agreements are susceptible to a construction that dictates arbitration. Therefore, the congressional policy favoring that forum of dispute resolution requires the denial of judicial relief despite the possibility of fairly reading the contract to evidence a contrary intent. See *Affiliated Food Distrib., 483 F.2d at 420*. As a result, defendants' Motion to Compel Arbitration is granted.

## VI. CONCLUSION

Accordingly, plaintiff's Motion to Remand is denied, Defendants' Motion to Strike is denied, and Defendants' Motion to Compel Arbitration is granted. An appropriate order follows.

## ORDER

AND NOW, this 18th day of May 2006, upon consideration of Plaintiff's Motion to Remand and for Attorney's Fees, Costs [*20] and Expenses (Doc. No. 2), Defendants' Motion to Strike Certain Allegations in Plain-

tiff's Memorandum of Law in Support of its Motion to Remand and in the Affidavit of Joanne Caprice (Doc. No. 8), Defendants' Motion to Compel Arbitration (Doc. No. 11), all responses and reply briefs thereto, and the arguments and evidence presented before the Court on May 16, 2006, it is hereby ORDERED as follows:

1. Plaintiff's Motion to Remand is DENIED.

2. Defendants' Motion to Strike is DENIED.

3. Defendants' Motion to Compel Arbitration is GRANTED.

BY THE COURT:

Legrome D. Davis, J.

109GD5

********** Print Completed **********

Time of Request: September 05, 2006 09:49 AM EDT

Print Number: 1821:116654492
Number of Lines: 268
Number of Pages:

Send To: HARDING, JR, JOHN
MORRISON MAHONEY LLP
250 SUMMER ST
BOSTON, MA 02210-1134